TJOFLAT, Chief Judge:
 

 Roger Novak appeals his conviction for criminal contempt. Novak, an employee of the insurer for the defendants to a legal malpractice suit, willfully failed to comply with a district court’s order directing him to appear before the court at a pretrial conference to facilitate settlement discussions. Although we conclude that the district court lacked the authority to issue that order, we nevertheless affirm Novak’s conviction for criminal contempt.
 

 I.
 

 The facts underlying this dispute are relatively simple. The appellant, Roger No-vak, is a senior claim analyst for Continental Casualty Company (CNA). Novak resides in Naperville, Illinois and is employed at CNA’s home office in Chicago.
 

 In May 1989, Vickie Roberts filed a legal malpractice suit against David Hammock
 
 *1395
 
 and his law firm in the United States District Court for the Southern District of Georgia; jurisdiction was based on diversity of citizenship. The defendants were insured by CNA. Under the terms of the policy, CNA hired local counsel, Clay Rat-terree, to defend the suit on the defendant’s behalf. CNA supervised Ratterree’s performance from its Atlanta branch office. Ratterree, although authorized to enter into settlement negotiations, had no power to settle the case without CNA’s express approval.
 

 The trial of the case was scheduled for Monday, November 13, 1989 in Savannah, Georgia. On Thursday, November 8, the district judge conducted a pretrial conference; the following day he met with counsel for a settlement conference. At this conference, Ratterree, pursuant to CNA’s instructions, offered the plaintiff $150,000 to settle the case. Plaintiff’s counsel rejected the offer, stating that his client needed more money. Ratterree, in response, said that he had to take the matter up with CNA in Atlanta. At this point, the district court instructed Ratterree to find out who in CNA had full settlement authority for the case. Ratterree contacted the case manager in Atlanta, who told him that Novak had the last word on settlement for the case, and Ratterree gave this information to the district court. The court then issued an order directing Novak to appear before it in Savannah on November 13 for a settlement conference.
 
 [1]
 
 The court sent a copy of the order to Novak in Chicago by facsimile transmission. The court also instructed Ratterree to inform Novak of the order; Ratterree transmitted a copy of the order to Novak and twice informed him of the order by telephone.
 

 During one of these calls, Novak told Ratterree that CNA would make a good faith effort to settle the case and he authorized Ratterree to offer the plaintiff $225,-000, indicating that this would be CNA’s highest offer. Apparently believing that this would satisfy his obligation under the November 9 order, Novak chose not to appear before the district court on November 13. On November 14 the court issued an order directing Novak to appear before it in Savannah on November 22, 1989 to show cause why he should not be held in contempt of court; the United States Marshal for the Northern District of Illinois served this order personally on Novak.
 
 [2]
 

 Novak appeared as ordered and, in a “special appearance,” challenged the district court’s jurisdiction over his person. According to Novak, the court lacked the authority to issue the November 9 order because he had insufficient “minimum contacts” with the Southern District of Georgia to satisfy the requirement of due process of law and to subject him to the court’s jurisdiction. Thus, Novak concluded, the court’s order was void, and he was entitled to disobey it with impunity.
 
 [3]
 

 
 *1396
 
 The court rejected these contentions. First, the court held that its authority to issue the November 9 order derived from its inherent power to facilitate settlement in cases properly before it, pursuant to Fed.R.Civ.P. 16.
 
 [4]
 
 Second, the court observed that it clearly had jurisdiction over CNA, Novak’s employer. The court reasoned that it simply had instructed CNA to designate a representative with full settlement authority, which CNA did through Ratterree; the court then ordered that representative to appear before it. Therefore, the court rebuffed Novak’s jurisdictional challenge and held him in criminal contempt, fining him $500.
 

 Novak appeals, contesting the district court’s authority to order him to appear at the settlement conference. He contends that since the order was directed to him personally, the only relevant question is whether the court had jurisdiction over his person; the district court erred in concentrating on his employer’s contacts with the forum. Viewed in this light, Novak argues, it is clear that the court had no authority to issue the order in question. Novak concludes that because the court’s order was beyond its jurisdictional power, the order is void. Accordingly, he had no obligation to obey the order, and he could disregard it with impunity.
 

 The Government responds that the district court’s authority to issue the order in question derives from its inherent power to fulfill the objectives of Fed.R.Civ.P. 16 and was not dependent on its jurisdiction over Novak, CNA, or the parties to the underlying action. According to the Government, the district court’s inherent power to require a representative of a party’s insurer to attend a settlement conference gave the court the power to compel Novak’s attendance as the designated representative of CNA.
 

 Alternatively, the Government argues that the district court did have personal jurisdiction over Novak. CNA’s Atlanta office had kept him posted as to the progress of the case and he had communicated Ratterree’s settlement authority by telephone. The Government contends that this involvement constituted sufficient contacts to subject Novak to the district court’s jurisdiction and Novak reasonably should have anticipated being haled into court in that forum; thus, the district court, in exercising jurisdiction over Novak, did not deny him due process of law.
 

 We conclude that the district court properly held Novak in criminal contempt. Generally, an individual must comply with a court’s order, regardless of its validity, until it is reversed. Novak disregarded the district court’s order based on his own evaluation of its correctness; while we agree with Novak, for reasons different from his, that the underlying order in this case was invalid, we will not allow him to ignore the order with impunity. Of course, there are a few exceptions to the rule that an individual must comply with an invalid court order. None of those exceptions, however, apply in this case. Accordingly, we affirm Novak’s conviction for criminal contempt.
 

 II.
 

 It is well established that an order duly issued by a court having subject-matter jurisdiction over a case or controversy before it, and personal jurisdiction over the parties to that ease or controversy, must be obeyed, regardless of the ultimate validity of the order.
 
 Maness v. Meyers,
 
 419 U.S. 449, 459, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975);
 
 United States v. United Mine Workers,
 
 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947);
 
 United States v. Dickinson,
 
 465 F.2d 496, 509 (5th
 
 *1397
 
 Cir.1972).
 
 [5]
 
 Disobedience of an invalid court order may be punished as criminal contempt.
 
 [6]
 
 As Chief Judge John Brown explained: “People simply cannot have the luxury of knowing that they have a right to contest the correctness of the judge’s order in deciding whether to willfully disobey it.... Court orders have to be obeyed until they are reversed or set aside in an orderly fashion.”
 
 Dickinson,
 
 465 F.2d at 509 (quoting
 
 Southern Ry. v. Lanham,
 
 408 F.2d 348, 350 (5th Cir.1969) (Brown, C.J., dissenting from denial of rehearing en banc)).
 

 This rule, known as the collateral bar rule, is vividly illustrated by the case of
 
 Walker v. City of Birmingham,
 
 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). In
 
 Walker,
 
 an Alabama trial court, on motion by city officials, enjoined a group of leading civil rights activists, including Dr. Martin Luther King, Jr., from marching through Birmingham during the forthcoming Easter weekend to protest against racial discrimination; the injunction was simply a judicial paraphrase of an existing municipal ordinance. Ignoring the order, the demonstrators marched as planned, without having taken any judicial steps to dissolve or overturn the injunction. As a result of their knowing disregard of the injunction, the court convicted the demonstrators of criminal contempt and sentenced them to five days in jail, plus a $50 fine. Although the Supreme Court recognized that the municipal ordinance on which the injunction was based raised substantial “constitutional issues,”
 
 id.
 
 at 316, 87 S.Ct. at 1830, the Court nevertheless upheld the contempt convictions. Said the Court:
 

 The rule of law that Alabama followed in this case reflects a belief that in the fair administration of justice no man can be judge in his own case, however exalted his station, however righteous his motives, and irrespective of his race, color, politics, or religion_ [RJespect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom.
 

 Id.
 
 at 320-21, 87 S.Ct. at 1832 (footnote omitted). Thus, “even in a case where the equities cut so dramatically in favor of the accused contemnors, the Supreme Court came down on the side of the orderly rule of law.”
 
 In re Establishment Inspection of Hern Iron Works,
 
 881 F.2d 722, 726 (9th Cir.1989).
 

 There are situations, however, where the collateral bar rule is inapplicable. First, if the issuing court lacks subject-matter jurisdiction over the underlying controversy or personal jurisdiction over the parties to it, its order may be violated with impunity.
 
 In re Green,
 
 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198 (1962);
 
 Ex parte Fisk,
 
 113 U.S. 713, 718, 5 S.Ct. 724, 726, 28 L.Ed. 1117 (1885);
 
 Dickinson,
 
 465 F.2d at 511. “In such a case, the original order is deemed a nullity, and the accused contemnor cannot be fairly punished for violating nothing at all.”
 
 In re Hern Iron Works,
 
 881 F.2d at 726-27. Second, the collateral bar rule presupposes that adequate and effective remedies exist for orderly review of the challenged ruling; in the absence of such an opportunity for review, the accused contemnor may challenge the validity of the disobeyed order on appeal from his criminal contempt conviction and escape punishment if that order is deemed invalid.
 
 Dickinson,
 
 465 F.2d at 511. Third, the order must not require an irretrievable surrender of constitutional guarantees.
 
 See Maness,
 
 419 U.S. at 460, 95 S.Ct. at 592;
 
 Dickinson,
 
 465 F.2d at 511.
 
 [7]
 
 In such a case, the only way to
 
 *1398
 
 preserve a challenge to the validity of the order and repair the error is to violate the order and contest its validity on appeal from the district court’s judgment of criminal contempt.
 
 [8]
 
 Finally, court orders that are transparently invalid or patently frivolous need not be obeyed.
 
 Id.
 
 at 509;
 
 In re Providence Journal Co.,
 
 820 F.2d 1342, 1347 (1st Cir.1986),
 
 modified,
 
 820 F.2d 1354 (1st Cir.1987) (en banc; per curiam),
 
 cert. dismissed for lack of jurisdiction,
 
 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988). This exception is based, as is the first for jurisdictional defects, on the notion that “the right of the citizen to be free of clearly improper exercises of judicial authority” demands respect.
 
 Id.
 

 The first three exceptions to the collateral bar rule are clearly inapplicable in this case. First, Novak does not dispute that the district court had subject-matter jurisdiction over the legal malpractice case pursuant to 28 U.S.C. § 1332 (1988) (diversity of citizenship)
 
 [9]
 
 and personal jurisdiction over the parties to that case. Thus, the underlying controversy and the parties to it were properly before the district court, and it could issue orders necessary to manage and adjudicate that action.
 

 Second, adequate and effective remedies existed for Novak to obtain orderly review of the district court’s order directing him to appear before it to facilitate settlement discussions. Initially, Novak could have moved to quash the court’s order.
 
 See Kleiner v. First Nat’l Bank,
 
 751 F.2d 1193, 1208 (11th Cir.1985) (“If the order is believed to be incorrect, the remedy generally is to seek a change in the order — usually by a motion to quash_”) (quoting
 
 In re Grand Jury Proceedings,
 
 601 F.2d 162, 168-69 (5th Cir.1979)). If the court denied his motion, then Novak could have appealed that ruling.
 
 See, e.g., id.; Caswell v. Manhattan Fire & Marine Ins. Co.,
 
 399 F.2d 417, 422 (5th Cir.1968) (“A nonparty may appeal an order denying his motion to quash when under the circumstances he would be otherwise denied an effective mode of review.”);
 
 Overby v. United States Fidelity & Guar. Co.,
 
 224 F.2d 158, 162 (5th Cir.1955) (denial of motion to quash order requiring bank to produce documents may be appealed before resolution of suit between parties). Therefore, Novak suffers no unfair hardship by our application of the collateral bar rule in his case; it was his failure properly to challenge the district court’s order and his subsequent disobedience of that order — not any failing of the judicial system — that resulted in his contempt conviction.
 

 Third, the district court's order did not require Novak to irretrievably surrender any constitutional guarantee; indeed, No-vak does not argue that the order was violative of any individual right protected by the Constitution. Instead, he simply asserts that the district court did not have the authority to issue the order directing him to appear before it to facilitate settlement discussions. Accordingly, this exception is inapplicable.
 

 The only exception to the collateral bar rule arguably applicable here is that a transparently invalid or patently frivolous order may be disobeyed with impunity.
 
 *1399
 
 “The line between a transparently invalid order and one that is merely invalid is, of course, not always distinct.”
 
 In re Providence Journal Co.,
 
 820 F.2d at 1347. In order to protect the judiciary’s power, however, we must indulge, in criminal contempt cases, a heavy presumption in favor of the validity of every court order.
 
 See id.
 
 (“[I]f the court reviewing the order finds the order to have had any pretence to validity at the time it was issued, the reviewing court should enforce the collateral bar rule.”). Only when there is no color-able, nonfrivolous argument to support the order being reviewed should a contemnor be excused from his disobedience of the order.
 

 Novak argues that the district court clearly lacked jurisdiction over his person and thus exceeded its authority by issuing the order directing him to appear before it to facilitate settlement discussions; thus, the order is transparently invalid.
 
 [10]
 
 The Government, on the other hand, contends that the district court had the inherent power to issue such an order and that the court’s jurisdiction over Novak is irrelevant. It is clear that no statute or rule provides the district court with the authority to issue the order in question. The validity of this order, then, as the Government argues, turns solely on whether the court had the inherent power to issue it. If the court’s power to issue this order was truly inherent — i.e., necessary for the administration of justice,
 
 see infra
 
 pp. 1406-1407 then its personal jurisdiction, or lack thereof, over Novak is irrelevant. A federal court certainly has the power to issue any order necessary to preserve its ability to manage and adjudicate a case or controversy properly before it. Without such power, the federal judiciary would be crippled. Therefore, to decide whether the order directed at Novak was transparently invalid, we must determine whether such an order is arguably within the scope of the district court’s power to facilitate settlement discussions, pursuant to Fed.R.Civ.P. 16. We begin, in subpart A, with a brief explanation of how the Federal Rules of Civil Procedure envision the operation of pretrial settlement conferences; we also discuss the means Rule 16 gives the district courts to conduct these conferences. Then, we examine, in subpart B, the inherent powers district courts possess to overcome certain obstacles, not explicitly mentioned in the Federal Rules of Civil Procedure, that frustrate the goals of settlement conferences.
 

 A.
 

 As originally drafted, Rule 16 focused on “the use of the pretrial conference as a means to familiarize the litigants and the court with the issues actually involved in a lawsuit so that the parties [could] accurately appraise their cases and substantially reduce the danger of surprise at trial.” 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1522, at 218 (2d ed. 1990) [hereinafter Federal Practice and Procedure];
 
 see also Clark v. Pennsylvania R.R.,
 
 328 F.2d 591, 594 (2nd Cir.) (“One of the prime objectives [of Rule 16] is to do away with the old sporting theory of justice and substitute a more enlightened policy of putting the cards on the table, so to speak, and keeping surprise tactics down to a minimum.”),
 
 cert. denied,
 
 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964). This rule fit perfectly with the entire system created by the Federal Rules of Civil Procedure, the goal of which was to “secure the just, speedy, and inexpensive determination of every action.” Fed.R.Civ.P. 1. In a system with simplified notice pleading,
 
 see
 
 Fed.R.Civ.P. 8, unlimited joinder,
 
 see
 
 Fed.R.Civ.P. 13,14, 18-24, and broad discovery,
 
 see
 
 Fed.R. Civ.P. 26-37, pretrial conferences were essential because they afforded courts and litigants opportunities to sharpen disputes and, thus, to expedite the determination of the merits of each case.
 

 
 *1400
 
 The value of pretrial conferences has not diminished since the adoption of Rule 16 in 1937. Federal civil litigation, however, has changed significantly; increasingly, the focus of pretrial procedures is to resolve, rather than simply sharpen, disputes. To reflect these changes, the rule was “extensively rewritten and expanded [in 1983] to meet the challenges of modern litigation” by “more accurately] reflecting] ... actual practice.” Fed.R.Civ.P. 16 advisory committee’s notes. The advisory committee recognized “that it ha[d] become commonplace to discuss settlement at pretrial conferences.”
 
 Id.
 
 Accordingly, Congress amended Rule 16 to provide that “[i]n any action, the court may in its discretion direct the attorneys for the parties and any unrepresented parties to appear before it for a conference or conferences before trial for such purposes as ... facilitating the settlement of the case.” Fed.R.Civ.P. 16(a);
 
 see also id.
 
 16(c)(7);
 
 [11]
 
 6A Federal Practice and Procedure § 1522, at 225-26 (1983 amendments to Rule 16 officially recognized that “settlement is a legitimate objective that should be fostered during the pretrial conference”).
 

 Settlement conferences are valuable tools for district courts. First, they provide neutral forums to foster settlement, which, in turn, “eases crowded court dockets and results in savings to the litigants and the judicial system.” Fed.R.Civ.P. 16 advisory committee’s notes. Second, settlement conferences allow courts to
 
 manage
 
 their dockets efficiently.
 
 Cf. In re Baker,
 
 744 F.2d 1438, 1441 (10th Cir.1984) (en banc) (Rule 16’s sanctions protect matter most critical to courts: “management of [their] docket[s] and avoidance of unnecessary burdens on the tax-supported courts, opposing parties or both”),
 
 cert. denied,
 
 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985). At these conferences, courts receive important information from the parties concerning the status of cases. Relying on this information, courts then plan ahead, scheduling trials, hearings, and other necessary matters. This allows district courts to maximize the use of their valuable time, to the benefit of the public and the parties appearing before them.
 
 [12]
 
 Thus, in addition to aiding litigants, settlement conferences, like all pretrial conferences, benefit courts by providing them an opportunity to gather information they need to manage the judicial process efficiently.
 

 The success of pretrial settlement conferences depends primarily upon the preparedness of the participants. If the participants are unprepared, these conferences, rather than assisting in the resolution and management of the case, are simply cathartic exercises — the parties divulge their general feelings about the case, but neither party shares sharp analysis concerning its merit or provides the court with any reliable information for planning purposes. When participants are fully prepared, however, pretrial settlement conferences may be extremely productive. Prepared litigants are able to discuss the merits of the case cogently and negotiate settlement terms intelligently; furthermore, courts can rely upon these litigants’ representations to manage their dockets.
 

 Given the important interests district courts have invested in pretrial settlement conferences, the prospect of unprepared litigants frustrating these conferences is particularly troubling. “At a time when the federal courts [and judges] — which are a scarce dispute resolution resource, indeed — are straining under the pressure of an ever-increasing caseload,”
 
 Pelletier v. Zweifel,
 
 921 F.2d 1465, 1522 (11th Cir.1991) (discussing Fed.R.Civ.P. 11), we simply cannot permit litigants to waste the courts’ assets, not to mention those of their adver
 
 *1401
 
 saries, in this manner.
 
 [13]
 
 Since, however, the Federal Rules of Civil Procedure provide for open and extensive discovery prior to trial,
 
 see Hickman v. Taylor,
 
 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947) (“Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, [the Federal Rules of Civil Procedure provide that] either party may compel the other to disgorge whatever facts he has in his possession.”), individuals participating in pretrial settlement conferences are
 
 expected
 
 to come to these conferences fully prepared. Indeed, Rule 16 specifically empowers district courts to direct unrepresented parties or the attorneys for parties to appear before them to facilitate settlement discussions and to sanction these individuals if they come “substantially unprepared to participate in the conference.” Fed.R. Civ.P. 16(f). Thus, parties or their attorneys must evaluate discovered facts and intelligently analyze legal issues before the start of pretrial conferences. Furthermore, parties and their attorneys must discuss settlement options thoroughly prior to these conferences to ensure that settlement discussions are meaningful
 
 [14]
 
 — in other words, participants in pretrial settlement conferences must be prepared and authorized to negotiate and commit to settlement terms at that time.
 
 See G. Heileman Brewing Co. v. Joseph Oat Corp.,
 
 871 F.2d 648, 653 (7th Cir.1989) (en banc).
 
 [15]
 
 The model for pretrial settlement conferences, then, as envisioned by the Federal Rules of Civil Procedure, presumes that fully prepared individuals, having taken advantage of the extensive discovery provided by the rules and then evaluated their cases, will participate in such conferences; if these individuals (unrepresented parties or parties’ attorneys) actually are unprepared, Rule 16 authorizes the court to sanction them.
 
 [16]
 

 B.
 

 Sometimes, however, these pretrial conference participants, through no fault of their own, are not fully prepared to discuss settlement. This usually occurs in two situations: (1) when a represented par
 
 *1402
 
 ty refuses to give full settlement authority to his attorney, who appears on behalf of the party at the pretrial conference, and (2) when a nonparty insurer in charge of the litigation for one of the parties refuses to give full settlement authority to either that party or his attorney. In those situations, a pretrial conference participant’s ability to discuss settlement is impaired, and the value of the conference may be limited. The district courts, though, have no statutory or regulatory power to overcome such an impediment to fruitful settlement conferences; Rule 16 does not explicitly authorize them to issue orders directed at represented parties or nonparty insurers. Therefore, we must look to the inherent power of the district courts in order to determine whether they can issue orders and levy sanctions to remove, or diminish, these obstacles. We begin with a brief explanation of the scope of a district court’s inherent power. Then we discuss its application to the situations described above.
 

 1.
 

 “Inherent power” describes “the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.”
 
 Link v. Wabash R.R.,
 
 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962);
 
 see also Jones v. Graham,
 
 709 F.2d 1457, 1458 (11th Cir.1983) (per curiam). Such powers are “essential to the administration of justice.”
 
 Young v. United States ex rel. Vuitton et Fils S.A.,
 
 481 U.S. 787, 795, 107 S.Ct. 2124, 2131, 95 L.Ed.2d 740 (1987) (quoting
 
 Michaelson v. United States ex rel. Chicago, St. P., M. & O. Ry.,
 
 266 U.S. 42, 65-66, 45 S.Ct. 18, 19-20, 69 L.Ed. 162 (1924)). As the Supreme Court noted in
 
 United States v. Hudson,
 
 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812): “Certain implied powers must necessarily result to our courts of justice, from the nature of their institution ... because they are necessary to the exercise of all others.”
 

 “Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion.”
 
 Roadway Express, Inc. v. Piper,
 
 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980). Recognition and application of such power is “grounded first and foremost upon necessity.”
 
 United States v. Providence Journal Co.,
 
 485 U.S. 693, 701, 108 S.Ct. 1502, 1508, 99 L.Ed.2d 785 (1988) (dismissing certiorari) (discussing federal courts’ inherent power to initiate criminal contempt proceedings). Thus, a federal court may only invoke its inherent power when
 
 necessary
 
 to protect its ability to function. This includes more than “the power to impose silence, respect and decorum, in [its] presence, and submission to [its] lawful mandates,”
 
 Anderson v. Dunn,
 
 19 U.S. (6 Wheat.) 204, 227, 5 L.Ed. 242 (1821); it also encompasses the power to issue orders necessary to facilitate activity authorized by statute or rule.
 
 [17]
 

 2.
 

 We now address the district courts’ inherent power to overcome the obstacles, which we mention above, to productive Rule 16 settlement conferences.
 
 See supra
 
 p. 1406. The first obstacle arises when a party refuses to give his attorney, who appears in his behalf at a settlement conference, full authority to settle the case —i.e., full authority to negotiate terms and to commit the party to a particular position.
 
 [18]
 
 In that situation, the attorney’s ability to participate meaningfully in the settlement conference on the party’s behalf is limited. In effect, such an attorney serves simply as a courier, relaying offers and counter-offers between his client and the opposing attorneys; the party acts as
 
 *1403
 
 his own lawyer for settlement purposes. While such a process, which could continue for weeks or months, might be acceptable to the parties (and, indeed, they are free to arrange it on their own time), it is unacceptable for litigants to waste the court’s valuable time and to jeopardize its interests in this manner.
 

 The district courts’ power, pursuant to Rule 16, to sanction attorneys substantially unprepared to participate in pretrial conferences is of little help in removing this obstacle. Attorneys in this situation are unprepared because of their
 
 clients’
 
 actions, not their own inaction. Coercive measures against the attorneys, then, are unlikely to achieve the desired results because the parties may have little interest in protecting their attorneys from sanctions. Thus, to ensure that the goals of Rule 16 are not frustrated, it is necessary for a district court to be able to order any party, who, by retaining full settlement authority, effectively has decided to represent himself for settlement purposes, to produce an individual at the pretrial conference substantially prepared to discuss settlement options; this individual may be the party himself. To enforce such an order, the court may rely on its power to adjudge defiant parties in civil contempt and impose sanctions— ranging from fines to the striking of pleadings — on them. Therefore, we conclude that the power to direct parties to produce individuals with full settlement authority at pretrial settlement conferences is inherent in the district courts.
 
 See G. Heileman Brewing Co.,
 
 871 F.2d at 648; 6A Federal Practice and Procedure § 1525.1, at 254.
 
 [19]
 

 The second obstacle outlined above, and the one involved in the present case, arises when a nonparty insurer controls the litigation and does not give full settlement authority to either its named party insured or that party’s attorney. Once again, this obstacle may prevent the individuals participating in the pretrial conference from fully discussing settlement options; this, in turn, frustrates Rule 16’s goals. As with the first obstacle discussed above, Rule 16 does not explicitly provide the district courts with the power to remove this obstacle; Rule 16 makes no mention of nonparties or insurers. The district court in the present case, faced with such a
 
 *1404
 
 situation, concluded that it had the inherent power to direct an employee of the nonparty insurer to attend the settlement conference. We, however, conclude that it is not necessary for a trial judge to issue such an order to guarantee that settlement discussions are fruitful; thus, the district courts do not have the inherent power to issue such orders.
 

 Nonparty insurers generally have litigation interests aligned with their insured’s interests: the insurer either must indemnify its insured (the defendant) or has subro-gation rights to any judgment secured by its insured (the plaintiff). In those cases, the insurer, normally pursuant to its contract with its insured, hires an attorney to represent its insured and supervises this attorney’s work; this attorney protects the insurer’s interest — indeed, the attorney may not take any important steps, like settlement, without first checking with the insurer.
 
 [20]
 
 Effectively, then, the insurer is a party to the action: it controls the litigation for one party and has a real interest at stake. Formally, however, the insurer makes no appearance and is not a party. This formality may impede, as in the present case, a district court’s ability to conduct a fruitful settlement conference; the court is unable, under Rule 16, to order the nonparty insurer controlling the litigation to provide an individual with full settlement authority at the pretrial conference.
 

 Because these nonparty insurers have a real stake in the litigation, however, the district courts may rely on their power to order named parties to produce individuals with full settlement authority at pretrial conferences,
 
 see supra
 
 p. 1407, to coerce cooperation from nonparty insurers. When an insurer controls a party’s litigation, this party, if ordered to produce such an individual, must turn to his insurer to comply with the order and avoid sanctions; the insurer either must provide the necessary individual or confer full settlement authority on the party or his attorney. The insurer, of course, has a strong incentive to prevent the imposition of civil contempt sanctions that would harm its interests. Thus, the effect of directing an order to the named party (the insured) would be to coerce action by the nonparty insurer controlling the litigation. For example, a district court could coerce the assistance of a nonparty insurer in charge of the litigation by ordering its insured, a named party, to produce an individual at the pretrial conference fully authorized to discuss settlement and informing this party, in advance, that the court will strike his pleadings as a sanction for noncompliance with its order. In such a case, the insurer of a defendant would want to avoid the entry of judgment against the defendant, for which it would be financially liable; similarly, the subro-gated insurer of a plaintiff would want to avoid the dismissal of its insured’s complaint, because it would have a substantial interest in any judgment the insured might obtain.
 

 Thus, the district court in this case could have issued an order directed at the defendants to achieve its desired result. Instead, the district court issued an order directed at Novak, an employee of the non-party insurer of the defendants. That order was neither authorized by Congress nor necessary for the court to perform its duties. Accordingly, we conclude that the district court had no authority directly to order the appearance of Novak, an employee of the defendants’ insurer, to attend the pretrial settlement conference.
 

 We further conclude, however, that this order was neither transparently invalid nor patently frivolous. The issue in this case is one of first impression. The district court did not issue an order that was, at the time, clearly unauthorized by any source of power; indeed, there existed a colorable argument to support the issuance of the order. Accordingly, despite our conclusion that the district court erred by issuing the order directing Novak to appear before it in order to facilitate settle
 
 *1405
 
 ment discussions, we affirm Novak’s conviction for criminal contempt. It is our task, not Novak’s, to evaluate the correctness of the district court’s action. In the face of an order with arguable validity, the law required Novak to obey the district court’s order and, if he desired, to challenge it in the courts. By failing to follow this well-defined procedure, Novak exposed himself to criminal liability.
 

 III.
 

 To summarize, we conclude that the district court was unauthorized, by statute, rule, or its inherent power, to order Novak, an employee of the defendants’ insurer, to appear before it to facilitate settlement discussions. Therefore, that order was invalid. Nevertheless, Novak was required to obey the order until it was vacated; instead, he willfully disregarded it. For that, the district court properly convicted him of criminal contempt. Accordingly, the district court’s decision is
 

 AFFIRMED.
 

 [1]
 

 . The court order read, in pertinent part:
 

 The Court has been conducting a pretrial hearing ... and discussing with the parties the possibility of settlement. In order to have an effective settlement conference, it is necessary that a representative of [CNA] from its home office, with full discretionary authority to settle the case without the necessity of consulting with any other employee of [CNA], be present. Counsel for the defendants has advised such person is Mr. Roger Novak, analyst at the headquarters office of [CNA],
 

 Accordingly, said Roger Novak is hereby ORDERED to appear before the court on Monday, November 13, 1989....
 

 [2]
 

 . Fed.R.Crim.P. 42(b) states, in pertinent part:
 

 A criminal contempt ... shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given ... on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause....
 

 The order the court issued satisfied the requirements of this rule in that it notified Novak that his refusal to appear constituted, on its face, criminal contempt. Novak does not challenge the sufficiency of the order; accordingly, we do not discuss it further.
 

 [3]
 

 .Additionally, Novak revealed that he did not have full authority to settle the case; his settlement authority only extended to $100,000. (No-vak’s superiors at CNA had to approve any settlement figure over $100,000; these superiors approved the $225,000 settlement offer Novak authorized Ratterree to make,
 
 see supra
 
 p. 1399.) Thus, his attendance at the settlement conference would have been unhelpful. While
 
 *1396
 
 this revelation demonstrates why courts should direct such orders to the parties, requiring them to produce the proper individual,
 
 see infra
 
 pp. 1406-1407, it provides no defense in this case. If the order contained, or was based on, erroneous information, Novak could have informed the court of this in a respectful manner, directly or through Ratterree. Instead, he decided to ignore the court’s order. It is this decision that exposed him to criminal liability, not any court error. The law is settled that an order issued by a court with jurisdiction must be obeyed, even if the order itself is invalid.
 
 See infra
 
 p. 1400.
 

 [4]
 

 . For relevant portions of Fed.R.Civ.P. 16, see
 
 infra
 
 note 11.
 

 [5]
 

 . In
 
 Bonner v. City of Prichard,
 
 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.
 

 [6]
 

 . Invalidity of the underlying order is, however, a defense to a civil contempt citation.
 
 See United Mine Workers,
 
 330 U.S. at 294-95, 67 S.Ct. at 696-97.
 

 [7]
 

 .This exception also applies when the court’s order requires the surrender of rights or privileges not grounded in the Constitution that protect individuals from the revelation of privileged information, such as the attorney-client privilege and the attorney-work-product doctrine.
 
 In re Grand Jury Proceedings,
 
 601 F.2d 162, 169 (5th Cir.1979). In those cases, when "disclosure would cause irreparable injury,”
 
 id.,
 
 
 *1398
 
 noncompliance is justified. The present case does not involve the surrender of such rights or privileges.
 

 [8]
 

 . For example,
 
 Maness
 
 involved an order for the production of allegedly obscene materials; the order was challenged as violative of the fifth amendment right against self-incrimination. Although the petitioner, the attorney for the defendant below, had counseled violation of a facially valid court order, the Supreme Court reversed his conviction for criminal contempt. The Court concluded that “[w]hen a court during trial orders a witness to reveal information, ... [cjompliance could cause irreparable injury because appellate courts cannot always 'unring the bell’ once the information has been released. Subsequent appellate vindication does not necessarily have its ordinary consequence of totally repairing the error.”
 
 Maness,
 
 419 U.S. at 460, 95 S.Ct. at 592. In such a situation, the person to whom such an order is directed may resist that order and challenge its issuance on appeal, "with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal."
 
 Id.
 
 (citing
 
 United States v. Ryan,
 
 402 U.S. 530, 532-33, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971)).
 

 [9]
 

 . The plaintiff was a citizen of Tennessee, and the defendants were citizens of Georgia; the amount in controversy exceeded $50,000, exclusive of interest and costs.
 

 [10]
 

 . Novak did not specifically claim that the district court's order was transparently invalid or patently frivolous. This is, however, the effect of his arguments. Since this exception to the collateral bar rule is the only one possibly applicable to this case, we will treat Novak’s appeal as centering on this issue.
 

 [11]
 

 . Fed.R.Civ.P. 16(c)(7) provides, in relevant part:
 

 (c) Subjects to be Discussed at Pretrial Conferences. The participants at any conference under this rule may consider and take action with respect to
 

 (7) the possibility of settlement....
 

 [12]
 

 . The value of the court’s efficient management of its docket cannot be underestimated. In particular, if the court is able to adjudicate cases efficiently, without much delay, it reduces the costs to the taxpayers and the expenses incurred by jurors, witnesses, parties, and lawyers. This, in turn, creates an atmosphere more conducive to administering justice.
 

 [13]
 

 . Because the district court relies heavily on the pretrial conference to manage its docket, an unprepared litigant risks wasting valuable courtroom time, in addition to the time spent at the pretrial conferences. For example, if the litigants represent at a pretrial conference that they cannot settle the case, the court then must reserve a courtroom for a trial. If the litigants subsequently settle the case, prior to trial, the court may be unable to use this courtroom at all — it would simply sit empty. Additionally, a jury venire might be wasted, costing taxpayers and those jurors money,
 
 see supra
 
 note 12. Such waste could be avoided, however, if litigants properly prepared for the pretrial conference and fully explored settlement at that time. Indeed, since new information rarely is discovered between the last pretrial conference and the beginning of trial, there is generally no justification for eve- or day-of-trial settlements.
 

 [14]
 

 . Of course, before a pretrial conference, some issues remain unresolved. These issues are, in fact, specifically designated as subjects to be discussed at the pretrial conference,
 
 see
 
 Fed.R. Civ.P. 16(c). Uncertainty over these issues, however, need not frustrate settlement discussions by preventing litigants, prior to the start of a pretrial settlement conference, from preparing fully to discuss settlement. Rather, this uncertainty requires litigants to value their cases based on alternative assumptions; in other words, litigants must take different contingencies into account and evaluate their cases in light of these contingencies. For example, a plaintiff’s ability to "win” a case may depend upon the admission of certain evidence that the defendant has moved, in limine, to exclude. The plaintiff, then, in analyzing his case for settlement, would make alternative evaluations — one assuming the admission of this evidence, one its exclusion. Thus, despite the uncertainty over whether the court would exclude the evidence, the plaintiff would be prepared to discuss meaningfully settlement of the case following the court's resolution of unsettled issues. Only where a truly unforeseeable issue arises would an individual be able to justify his unpreparedness to discuss settlement fully.
 

 [15]
 

 . We do not mean, of course, that parties and their attorneys must be willing to settle a case. The purpose of Rule 16 is not "to impose settlement negotiations on unwilling litigants.” Fed. R.Civ.P. 16 advisory committee’s notes;
 
 see also Kothe v. Smith,
 
 771 F.2d 667, 669 (2nd Cir.1985) (Rule 16 "was not designed as a means Cor clubbing the parties — or one of them — into an involuntary compromise.”).
 

 [16]
 

 . Of course, parties are entitled to request a continuance from the district court, which the court may grant at its discretion, if they need more time to prepare for a pretrial conference.
 

 [17]
 

 . A federal court, however, may not take action under the guise of its inherent power when that action either contravenes a statute or rule or unnecessarily enlarges the court’s authority.
 

 [18]
 

 . “Full authority to settle" does not mean that the individual must be willing to settle. Nor is it "a requirement that [the individual] must come to court willing to settle on someone else’s terms.”
 
 G. Heileman Brewing Co.,
 
 871 F.2d at 653. It simply means that the individuals at the settlement conference must be authorized by the parties both to explore fully settlement options and to agree at that time to any settlement terms acceptable to the parties.
 

 [19]
 

 . We reject the argument that a court’s exercise of such power is inconsistent with, or in derogation of, Rule 16, and, thus, is unauthorized. That argument is premised on the proposition that Rule 16, by explicitly mentioning only unrepresented parties and parties’ attorneys, prohibits, by negative implication, the district courts from issuing orders directed at represented parties. The Federal Rules of Civil Procedure, however, must be liberally construed.
 
 See
 
 Fed.R.Civ.P. 1;
 
 cf. Hickman,
 
 329 U.S. at 507, 67 S.Ct. at 392. "The wording of the rule and the accompanying commentary make plain that the entire thrust of the amendment to Rule 16 was to urge judges to make wider use of their powers and to manage actively their dockets....”
 
 G. Heileman Brewing Co.,
 
 871 F.2d at 652. As we explain above, this goal would be frustrated severely if courts were unable to direct represented parties, who have declined to confer full settlement authority upon their attorneys, to participate in pretrial settlement conferences. We will not hold, without specific language to the contrary, that Congress intended to frustrate the very rule it enacted by limiting the power of the district courts in this manner.
 
 See id.
 
 at 652-53 (Seventh Circuit, en banc, reaching same conclusion).
 

 Additionally, the reason Rule 16 specifically allows the district courts to direct parties’ attorneys and unrepresented parties to attend pretrial conferences is to ensure that the individuals actually in charge of the litigation are present at these conferences. Indeed, to ensure further that the responsible individuals attend such conferences, the local rules for many district courts require the attorney actually trying the case, or other attorneys empowered to enter into binding agreements for the parties, to appear at pretrial conferences.
 
 See, e.g.,
 
 Local Rule for the United States District Court for the Southern District of Georgia 8.3 (“Counsel who will actually try the case, or other counsel of record with authority to define issues, make stipulations, and discuss settlement, shall attend the pretrial conference.”). As we noted above, a party who refuses to give full settlement authority to his attorney and who retains control over settlement negotiations is, in fact, his own attorney for settlement purposes. In that setting, the justification for requiring only the party's attorney, rather than the party and his attorney, to attend the pretrial conference is absent; the individual actually in charge of the settlement issue is the party, not his attorney. Therefore, there is a colorable argument that Rule 16, on its face, empowers the court to order such a party to attend a pretrial settlement conference; the party is an unrepresented party with respect to settlement, and, thus, his attendance is crucial.
 

 [20]
 

 . When the insurer’s and the insured’s interests are not aligned, they generally hire their own attorneys to protect their conflicting interests.