SCHWARTZMAN, INC., a New Mexico Corporation, and the State of New Mexico ex rel. Schwartzman, Inc., Plaintiffs,

v.

ACF INDUSTRIES, INC., and the United States of America, Defendants.

No. CIV 93–27 M.

United States District Court, D. New Mexico.

Aug. 2, 1996.

---

Paul G. Bardacke, Eaves, Bardacke & Baugh, Albuquerque, NM, for plaintiffs Schwartzman, Inc., State of New Mexico, ex rel. Schwartzman, Inc.

Alan R. Wilson, Karol L.K. Pollock, Dines, Wilson & Gross, Albuquerque, NM, for defendant ACF Industries, Inc.

John W. Zavitz, U.S. Attorney's Office, District of New Mexico, Albuquerque, NM, Burke M. Wong, U.S. Department of Justice, Washington, DC, for defendant U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

MECHEM, Senior District Judge.

This matter came on for review of Magistrate Judge DeGiacomo's Memorandum Opinion and Recommendation entered May 22, 1996 recommending that the United States Department of Justice be sanctioned for failing to participate in good faith in the mandatory settlement conference set in this case. As the Magistrate Judge is recommending a sanction which is dispositive in nature, his ruling takes the form of a recommendation and is reviewed *de novo*. Fed. R.Civ.P. 72(b); *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519–20 (10th Cir.1995).

I have received objections to the Magistrate Judge's recommendation from the United States. No other party has commented. Reviewing the matter *de novo*, I accept the Magistrate Judge's factual findings, modify the decision, and recommit the matter to the Magistrate Judge with instructions. *See* Fed.R.Civ.P. 72(b).

## I. FINDINGS

This is an action for damages under the **Federal Tort Claims Act** alleging negligent disposal of industrial wastes causing soil and water contamination. The facts concerning the settlement proceedings are largely undisputed and are confirmed by the court file in this case and the tape recordings of the hearings before Magistrate Judge DeGiacomo.

On August 17, 1995, Magistrate Judge DeGiacomo mailed to counsel for all parties, including the United States of America, a notice to appear at a mandatory settlement conference on September 26, 1995. The notice indicated that "[c]ounsel of record, Plaintiff(s) and Defendant(s), or where appropriate a designated representative, with final and complete settlement authority, **must be present,** in accordance with Rule 16(f)." **(emphasis in original).** The notice went on to say: "Any request to excuse a party or trial counsel from attendance at this settlement conference must be presented to the Court in writing." Lastly, the notice mandated that "[p]rior to the conference, counsel are required to confer with one another in a good faith effort to resolve this litigation."

On August 24, 1995, trial counsel for the United States (hereinafter "Trial Counsel") mailed Magistrate Judge DeGiacomo a letter informing him that final settlement authority for the United States lay with Department of

Justice officials in Washington, who were unable to attend the conference in person but who would be available by telephone. On September 21, 1995, Trial Counsel sent Magistrate Judge DeGiacomo another letter informing him that certain governmental representatives were also unavailable to attend the conference in person and would be available by telephone. Neither letter was framed as a request, however, Magistrate Judge apparently allowed the exception.

At the September conference, Trial Counsel argued that settlement efforts would be unavailing until the district judge ruled on the United States' motion to dismiss raising a statute of limitations defense. As a result, the conference was continued "following ruling on issue of statute of limitations". Law Clerk's minutes from September 26, 1995 settlement conference.

I subsequently denied the motion on the statute of limitations and Magistrate Judge DeGiacomo ordered the parties to return on January 3, 1996 to continue settlement discussions. *See* Order issued December 7, 1995. Due to the federal government furlough, however, the conference had to be continued again.

The Magistrate Judge issued another order on January 2, 1996 resetting the conference for Monday, February 26, 1996 at 9:00 a.m. This order reminded all counsel that "parties or personal representatives must have final and complete settlement authority so that no further decision or consultation upon the merits of any aspect of the litigation is required."

More than six weeks later, on the Friday afternoon before the settlement conference, at 4:41 p.m., Trial Counsel faxed Magistrate Judge DeGiacomo a letter indicating that he would be attending the settlement conference with "complete and final settlement authority within my preapproved limits." Letter to Magistrate Judge DeGiacomo from Trial Counsel dated February 23, 1996. Trial Counsel now contends that "[m]y purpose in sending this letter was to make clear to the Court that I did not have unlimited settlement authority." Exhibit B to United States' Objections, filed June 6, 1996, Declaration of Burke M. Wong, ¶ 14.

The letter did not promise access to, much less personal participation of, anyone with final and complete settlement authority. Again, the letter was framed as notice, rather than request, and no further provision was made with the Court to ensure participation by the United States consonant with the Court's orders.

Trial Counsel's "pre-approved limits" turned out to be what Trial Counsel himself deemed "nuisance value" for the case. *Id.* at ¶ 15. Trial Counsel finally revealed to the Magistrate Judge at the February 26, 1996 settlement conference that he had no authority to negotiate, much less to approve settlement, above what he characterized as 'nuisance value'.

Magistrate Judge DeGiacomo attempted to secure telephonic participation of Trial Counsel's superior in Washington, to no avail. In frustration, the Magistrate Judge continued the conference until the next day, ordering orally and in writing the personal attendance of a qualified decision-maker for the United States. *See* Order issued February 26, 1996.

Virtually no time or effort was expended at the February 26, 1996 settlement conference in discussion of the prospects for settlement with the United States, even though a sizeable group of lawyers and party representatives had gathered for expressly that purpose. The entirety of the proceedings with the United States was directed to the problem of gaining access to a qualified representative for the purposes of conducting a good-faith settlement conference.

It also became apparent at the conference that no prior consultation had taken place to explore settlement with opposing counsel. The record reflects, and Defendant's own affidavits confirm, that Department of Justice officials conferred among themselves to arrive at their valuation of the case and then sent Trial Counsel as a messenger to the settlement conference to convey that message. *See e.g.,* United States' Objections, filed June 6, 1996, and Exhibits A, B and C to United States' Objections.

Trial Counsel also announced at the settlement conference that it was the intent of the

United States to appeal to the Tenth Circuit any ultimate adverse ruling on an as-yet-unbriefed sovereign immunity motion. This posture contributed to the Magistrate Judge's conviction that the United States had not come in good faith with the aim of exploring settlement.

Ultimately the Magistrate Judge set the matter for an evidentiary hearing, at which he concluded that the United States had acted in bad faith, "causing continuous delays and needless expense to all parties to this litigation." *Memorandum Opinion and Recommendation*, entered May 22, 1996 at 2. The Magistrate Judge found, in effect, that the United States never came to the bargaining table, as it was ordered to do. *Id.* at 4 (**"The result has been that for all these months the plaintiffs have been standing in line with the Court to buy a ticket on a train that had ceased to run."**). Furthermore, the Magistrate Judge found that "[t]he Department of Justice has established [a] policy of sending its attorneys to settlement conferences with limited authority, regardless of the Court's order." "The decisions were made not by [Trial Counsel] but by his superiors who were not before the Court. The settlement process was a mockery." *Id.* at 3.

I agree that the Magistrate Judge was misled and his orders were disregarded. The United States disobeyed the Magistrate Judge's order to send a representative with final and complete authority to the settlement conference or to make advance provision in writing for adequate participation by other means. Counsel for the United States disobeyed the Magistrate Judge's order to confer with opposing counsel in a good-faith effort to resolve the litigation.

Substantial evidence supports a finding that counsel for the United States acted in bad faith, causing continuous delays and needless expense to all parties in the litigation. I further agree that sanctions should be applied against the United States Department of Justice, rather than against Trial Counsel, who was indisputably deprived by his superiors of full authority to pursue settlement. *See e.g., In re Novak*, 932 F.2d 1397, 1406 (11th Cir.1991) (**"such an attorney serves simply as a courier"**).

## II. DISCUSSION

In this appeal, the United States argues, essentially, that the sheer volume of cases involving the federal government precludes them from taking settlement conferences seriously. This is an ironic stance, given (1) that settlement conferences present the best opportunity we have conceived of so far to resolve disputes with dispatch, and (2) that the government's failure to participate properly in this instance has necessitated a much greater investment of Justice Department resources in the case than would otherwise have been required, including the entry of appearance of three additional Justice Department attorneys to represent the United States and Trial Counsel on the matter of sanctions alone, and (3) that there is probably no higher function assigned to the Department of Justice than to represent our country in connection with a claim of injury by one of its citizens.

■ The United States also argues, equally unconvincingly, that requiring them to send a fully authorized representative to settlement conferences amounts to unfair coercion to settle cases they have no intention of settling. *See e.g., Kothe v. Smith*, 771 F.2d 667, 669 (2nd Cir.1985) (**Rule 16 "was not designed as a means for clubbing the parties—or one of them—into an involuntary compromise."**). The United States is mistaken. It is not being reprimanded today for its refusal to settle this case, but for its refusal to come "to the bargaining table." United States' Objections at 23.

The United States' third and most distasteful argument is that this Court lacks the authority to compel participation in a settlement effort, or that the exercise of such authority against the Executive Branch violates the separation of powers doctrine. Again, the United States is mistaken.

■ This Court possesses at least three sources of power to compel participation in mandatory settlement conferences. First, Rule 16, which was expressly cited by the Magistrate Judge in his first notice to these

litigants, was amended in 1993 to clarify and strengthen the authority of federal district courts to compel participation in settlement proceedings. The rule now states bluntly that "[i]f appropriate, the court may require that a party or its representative be present or reasonably available by telephone in order to consider possible settlement of the dispute." Fed.R.Civ.P. 16(c).

The **Civil Justice Reform Act of 1990** also authorized district courts to hold mandatory settlement conferences as part of civil justice and delay reduction plans. *See* 28 U.S.C. § 473(b)(5). This effort arose out of the conclusion that "[s]ettlement conferences are valuable tools for district courts." *In re Novak, supra* at 1404.

■ Third and most important, the district courts have inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 1406 (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962)). Even the cases predating the 1993 amendments to Rule 16 acknowledge that "subject to the abuse-of-discretion standard, district courts have the general inherent power to require a party to have a representative with full settlement authority present—or at least reasonably and promptly accessible—at pretrial conferences. This applies to the government as well as private litigants." *In re Stone*, 986 F.2d 898, 903 (5th Cir.1993).

Stripping away the Justice Department's bombast, what remains is a simple conflict, or perhaps no conflict at all, between the Court's insistence on a meaningful settlement effort and the Justice Department's intricate regulatory scheme for closure of federal government cases. *See* 28 C.F.R. § 0.160 *et seq.* The United States Congress has designated quite simply that "[t]he Attorney General *or his designee* may arbitrate, compromise, or settle any claim" within the original jurisdiction of the federal courts. 28 U.S.C. § 2677 (emphasis added). However, the Department of Justice thereafter promulgated an exquisitely complicated network of regulations delegating the Attorney General's settlement authority among a small pool of high-ranking officials, subject to numerous approval and consultation requirements, leav-

ing Justice Department attorneys not surprisingly to aver that they simply cannot make a meaningful appearance at the vast majority of settlement conferences across this country. *See* United States' Objections at 17 (**"It would be virtually impossible for high-ranking Department of Justice officials to attend thousands of mediation and settlement conferences in which plaintiffs allege damages in excess of $500,000."**).

■ Ultimately, if these regulations conflict with Rule 16, or interfere substantially with the inherent power of this Court, they must and do fail. *Chilcutt v. U.S.*, 4 F.3d 1313, 1325, n. 31 (5th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 460, 130 L.Ed.2d 367 (1994) (**"if an inconsistency existed, however, the Federal Regulations, which do not have the force of a federal statute, would have to bow to the Federal Rules of Civil Procedure, which do."**) (citing *Sibbach v. Wilson and Co.*, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941)); *see also In re Stone, supra.* Ultimately, it is well within the "province" of this Court to "arrogate" itself into a review of Department of Justice settlement regulations. *See* United States' Objections at 2–3, 23.

Having briefly reviewed these regulations, however, I see no immediate, insurmountable conflict with Rule 16 as it is applied in this district. This Court is quite accustomed to presiding over settlement proceedings involving governmental entities, large and small. The Magistrate Judges regularly craft mechanisms to establish fruitful communications with officials who cannot be present and/or to secure settlement approval from various risk management agencies or boards consonant with their regulations and policies. *See e.g.,* September 26, 1995 Settlement Conference (Tape 1), Magistrate Judge DeGiacomo speaking: **"I can do all kinds of things, provided there is a willingness to talk."** Indeed, such an invitation was explicitly made by Magistrate Judge DeGiacomo in this case.

Central to this effort, however, is the good faith participation of a qualified representative. *See e.g.,* Advisory Committee Notes to Rule 16(c), 1993 Amendments (**"Particularly**

in litigation in which governmental agencies or large amounts of money are involved, there may be no one with on-the-spot settlement authority, and the most that should be expected is access to a person who would have a major role in submitting a recommendation to the body or board with ultimate decision-making responsibility."). It is not the rank of this representative which concerns the Court, but rather his or her authority to confront the dispute, in dialog with the parties, opposing counsel, and the Magistrate Judge, and to participate fully in the attempt to resolve it.

Were the purpose of a settlement conference merely to exchange offer and demand, there would be no need for any mediator, much less a federal Magistrate Judge. To reiterate in the simplest terms: this Court construes Rule 16 to require, and to permit this Court to require, the participation of fully authorized representatives in mandatory settlement proceedings, by means approved by the Court, subject to an abuse of discretion standard.

## DISPOSITION

■ The failure to participate in good faith in any Rule 16 conference is a serious matter which can have serious consequences. *See e.g., Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 493, 1996 WL 80448 (10th Cir. 1996) (unpublished disposition) (dismissal); *Held v. Shelter Systems Group Corp.*, 16 F.3d 416, 1994 WL 47157 (10th Cir.1994) (unpublished disposition) (default). The United States is no less subject to these penalties than any private party. *See e.g., Bradley v. U.S.*, 866 F.2d 120, 126 (5th Cir. 1989) ("**All parties are expected to conform their conduct to these rules, or face sanctions of their failure to do so; this is even more true for the federal government, a party that regularly appears before the federal courts, knows the rules by which they operate, and is even at times a special beneficiary of those rules.**"). Moreover, the law is clear that Rule 16 sanctions may be imposed even if the court is later found to lack subject matter jurisdiction over the merits of the dispute, to wit, even if the United States ultimately prevails in its sovereign immunity motion in this case. *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1552–54 (10th Cir.1996).

■ Magistrate Judge DeGiacomo was persuaded that a monetary sanction would have little effect, given Defendant's contumacious posture, and recommends evidentiary sanctions. I find, however, that this case presents an opportunity which we should not eschew to craft a settlement procedure which accommodates, if possible, the regulatory settlement restrictions on Department of Justice attorneys while ensuring that the representatives participating in our settlement conferences have sufficient authority to pursue and procure settlement on behalf of the United States. *See Olcott, supra* at 1555 **(when faced with a Rule 16 violation, district courts have substantial discretion to craft a remedial order which serves the interests of justice, relates specifically to the problem at hand, and seeks to deter similar sanctionable conduct in the future).**

Accordingly, the following remedial order is hereby entered:

1. Defendant United States of America, through its counsel, shall engage in good faith with Magistrate Judge DeGiacomo in an effort to craft a settlement procedure which accommodates, if possible, the regulatory settlement restrictions on Department of Justice attorneys while ensuring that the representatives participating in settlement conferences have sufficient authority to pursue and procure settlement on behalf of the United States.

2. Defendant United States of America shall participate fully and in good faith in another settlement conference before Magistrate Judge DeGiacomo in this case.

3. Prior to that settlement conference, counsel for the United States of America shall confer with opposing counsel in a good-faith effort to resolve this litigation.

4. The United States Department of Justice shall pay all reasonable expenses, including attorney fees, incurred by all participants to the proceedings before Magistrate Judge DeGiacomo in this case on February 26, 1996, February 27, 1996 and March 20, 1996.

5. This matter is recommitted to Magistrate Judge DeGiacomo:

a. to admit evidence on the amount of expenses and attorney fees reasonably incurred by all participants to the February and March proceedings before him in this case, and to award those expenses and attorney fees against the United States Department of Justice;

b. to craft, in consultation with the parties, a settlement procedure which accommodates the regulatory settlement restrictions on Department of Justice attorneys while ensuring that the representatives participating in settlement conferences have sufficient authority to pursue and procure settlement on behalf of the United States, OR to bring to my attention any insurmountable conflict with the regulations which appears to substantially interfere with this Court's exercise of Rule 16 or its inherent powers; and

c. to preside over another settlement effort in this case.

**IT IS SO ORDERED.**