In re the MARRIAGE OF Craig B. WEBB, Appellee,

and

Dana L. CHRISTIANSEN, Appellant.

No. 10CA2333.

Colorado Court of Appeals, Div. II.

Aug. 18, 2011.

Rehearing Denied Nov. 23, 2011.

Hagen & Melusky, Inc., David J. Melusky, Windsor, Colorado, for Appellee.

Highlands Ranch Law Center P.C., Anne W. Gill, Sharlene J. Aitken, Highlands Ranch, Colorado, for Appellant.

Opinion by Judge WEBB.

In this post-dissolution of marriage proceeding, Dana L. Christiansen (mother) appeals the finding of contempt and award of attorney fees in favor of Craig B. Webb (father). Because the evidence supports the trial court's finding that mother failed to communicate with father regarding their child's non-emergency medical condition before authorizing a diagnostic procedure on the child, we affirm the trial court's determination of "remedial contempt." However, because remedial sanctions can be awarded only with a purge clause, which the sanctions order here did not include, and because mother's one-time contemptuous act could not be purged, the attorney fees award is reversed.

## I. Background

The court's 2007 order provided for shared decision-making on all major health decisions, including "joint decisions with regard to non-routine health issues." It also required the parties to notify and consult each other, if possible, for medical emergencies.

Father moved to hold mother in contempt, alleging, as pertinent here, that she violated the 2007 order when she "made a unilateral decision to have the child seen at the emergency room ... [and] she unilaterally require[d] a CAT scan" without contacting father in advance. Father requested remedial and punitive sanctions, including attorney fees as a remedial sanction.

Mother responded that because the child's condition constituted a medical emergency, consultation with father before the CAT scan was unnecessary. She also argued that, nonetheless, she did call and confer with father twice, both before and after the CAT scan. Father asserted that mother had communicated only via text messages, which he had not received until after the CAT scan was completed. He also disputed that any emergency existed and asserted that mother's trip to the emergency room had been prompted by her desire to resolve uncertainty so she could take the child on vacation the next day.

The court found that the child's condition "was not an emergency situation," that father "was not advised about the CAT scan until after it happened," and that mother's consultation with him was inadequate. The court held mother in contempt and required her to pay father's attorney fees incurred in the contempt proceeding. However, the court "was unable to find punitive contempt."

## II. The Record Supports the Finding of Contempt Mother first challenges the sufficiency of the evidence

### A. Standard of Review and Law

"The decision whether to find a party in contempt is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *In re Marriage of Davis*, 252 P.3d 530, 537 (Colo.App.2011). Factual determi-

nations as to contempt must be accepted "unless there is no support in the record or the findings are clearly erroneous." *Eichhorn v. Kelley*, 111 P.3d 544, 549 (Colo.App. 2004). "[T]o find a party in contempt the fact finder must find that the contemnor did not comply with a lawful order of the court." *In re Marriage of Cyr*, 186 P.3d 88, 91 (Colo.App.2008); *see* C.R.C.P. 107(a)(1) (definition of contempt includes disobedience of a court order).

### B.  Analysis

■ Mother testified that in her opinion as a physician, a CAT scan was appropriate to diagnose the child's symptoms and that the emergency room physicians had agreed. She also testified that she had been referred by an urgent care facility to the emergency room. She presented phone records purporting to show her two calls to father.

However, the evidence was conflicting whether the child's condition constituted an emergency and whether the timing, method, and content of mother's contact with father were adequate. Because the record supports the court's findings of no emergency and inadequate contact, we will not disturb the trial court's resolution of the conflicts. *See In re Marriage of Herrera*, 772 P.2d 676, 679 (Colo.App.1989) ("[T]he trial court's contempt finding, though based on conflicting evidence, is supported by the record and will not be disturbed on review.").

Accordingly, we conclude that the court did not err in holding mother in contempt for violating the 2007 order.

### III.   Lack of a Purge Clause Precludes an Attorney Fees Award

Mother next raises questions of interpreting the "attorney's fees" clause in C.R.C.P. 107(d)(2) and applying that interpretation to the facts, which, as concern her inability to purge the contempt, are undisputed.

### A.   Standard of Review and Law

Traditional principles of statutory construction inform the interpretation of court rules. *Leaffer v. Zarlengo*, 44 P.3d 1072,

1078 (Colo.2002). We interpret statutes de novo. *See, e.g., Glover v. Innis*, 252 P.3d 1204, 1206 (Colo.App.2011).

■ As presently drawn, "Rule 107 distinguishes between two types of contempt, direct and indirect, and two types of sanctions, punitive and remedial." *In re Estate of Elliott*, 993 P.2d 474, 478 (Colo.2000). Here, although the trial court did not use the terms "direct" or "indirect," its findings make clear that only indirect contempt—not committed in the court's presence—was at issue. And while the court's bench ruling refers to "sustain[ing] as remedial contempt" father's allegation against mother, the court's express refusal to find "punitive contempt," coupled with the structure of Rule 107, indicate that the court could only have meant to impose remedial sanctions.

We first conclude that attorney fees can be awarded only as a component of remedial sanctions. *See In re Marriage of Nussbeck*, 949 P.2d 73, 75 (Colo.App.1997) (a remedial order is "the predicate for the award of attorney fees"), *rev'd on other grounds*, 974 P.2d 493 (Colo.1999); *see also People v. Shell*, 148 P.3d 162, 178 (Colo.2006) ("Rule 107(d)(2) permits the assessment of costs and attorneys' fees where remedial sanctions are imposed against a contemnor.").

Cases predating the 1995 amendments to Rule 107 that hold otherwise are inapposite. *See, e.g., In re Stone*, 703 P.2d 1319, 1323 (Colo.App.1985) (court "did not impose remedial or punitive sanctions" but ordered offending parties "to pay the attorney fees and costs incurred by the special prosecutor in prosecuting this contempt motion"); *cf. Eatchel v. Lanphere*, 170 Colo. 545, 549, 463 P.2d 457, 460 (1970) (describing attorney fees award as "adjunct" to contempt finding).[1]

Rule 107(d)(2), "Remedial Sanctions," now provides, "Costs and reasonable attorney's fees in connection with the contempt proceeding may be assessed in the discretion of the court." Because the phrase "the contempt proceeding" could mean either any contempt proceeding or only a contempt proceeding involving remedial sanctions, it is

---

1.  The division in *Cyr*, 186 P.3d at 92–94, summarized the history of these amendments.

ambiguous. Thus, we look beyond this language to principles of statutory interpretation. *See, e.g., People v. Trujillo,* 251 P.3d 477, 478 (Colo.App.2010).

Here, two such principles support our conclusion. First, use of "the" to modify "contempt proceeding" indicates a reference to a specific type of contempt proceeding, not a general reference to any contempt proceeding. *See Brooks v. Zabka,* 168 Colo. 265, 269, 450 P.2d 653, 655 (1969) ("[T]he definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.' "). Second, the section heading limits this sentence to "Remedial Sanctions." *See, e.g., Allely v. City of Evans,* 124 P.3d 911, 913 (Colo.App.2005) (interpretation may consider section heading under which language at issue appears).

We next conclude that a remedial sanction must include a purge clause. Such a sanction is "imposed to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform." C.R.C.P. 107(a)(5). Thus, "[w]hen the court imposes a remedial contempt sanction, it must do so 'in writing or on the record describing the means by which the person may purge the contempt.'" *Cyr,* 186 P.3d at 92 (quoting C.R.C.P. 107(d)(2)).

Therefore, we further conclude that where the contemnor commits a one-time violation, incapable of being purged, attorney fees may not be assessed as a remedial sanction. The structure of Rule 107(d)(2) supports this conclusion: the attorney fees sentence is preceded by the requirement that the court enter an order "describing the means by which the person may purge the contempt and the sanctions that will be in effect until the contempt is purged." *Cyr,* 186 P.3d at 92. The meaning of a phrase includes "the context of the statutory provision in which it is found." *Denver Post Corp. v. Ritter,* 255 P.3d 1083, 1090–91 (Colo.2011). Thus, a punitive sanction, such as a fine or

imprisonment, is the only avenue for punishment.

### B.   Analysis

Here, no remedial sanction was imposed, nor could one have been. The CAT scan contempt constituted a one-time violation of the 2007 order committed over a year before father even raised the issue with the court. By that time, mother could not undo what she had done. Hence, the attorney fees award must be reversed.[2]

### IV.   Conclusion

The order is affirmed as to the finding of contempt and the attorney fees award is reversed.

Judge CASEBOLT and Judge DAILEY concur.

---

**2.** We decline to address whether the absence of a purge clause also invalidates the court's finding of contempt because mother did not raise this argument.