The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 26, 2020

**2020COA54**

**No. 19CA0318, *People v. Flynn* — Crimes — Harboring a Minor**

As a matter of first impression, a division of the court of
appeals interprets section 18-6-601(1)(a)(I), C.R.S. 2019, harboring
a minor, and holds that the plain language requires the minor's
release to the officer requesting such release.  Because insufficient
evidence established this element, the harboring a minor conviction
is vacated.  The judgment is affirmed in all other respects.

COLORADO COURT OF APPEALS     **2020COA54**

Court of Appeals No. 19CA0318
Weld County District Court No. 17CR430
Honorable Thomas J. Quammen, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kristin Marie Flynn,

Defendant-Appellant.

## JUDGMENT AFFIRMED IN PART AND VACATED IN PART

Division VI
Opinion by JUDGE FREYRE
Richman and Grove, JJ., concur

Announced March 26, 2020

Philip J. Weiser, Attorney General, Joseph G. Michaels, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

The Walsh Law Firm, LLP, Jeffrey M. Walsh, Steamboat Springs, Colorado, for
Defendant-Appellant

¶ 1    Defendant, Kristin Marie Flynn, appeals the judgment of conviction entered on jury verdicts finding her guilty of the misdemeanor offenses of harboring a minor (harboring) and obstructing a peace officer.  She challenges only the sufficiency of the evidence to support her conviction for harboring a minor, which requires us to interpret, as matter of first impression, section 18-6-601(1)(a)(I), C.R.S. 2019.  Because the plain language of the statute makes it a crime for a person to fail to release a minor after being requested to do so by the officer, and because nothing in the trial record establishes this element, we vacate Ms. Flynn's harboring conviction.  We affirm the judgment in all other respects.

## I.    Factual Background

¶ 2    The following facts are not disputed.

¶ 3    Ms. Flynn's teenage son and his teenage girlfriend, T.B. (both minors), ran away from home (in Greeley, Colorado) to avoid the consequences of having an unauthorized party at T.B.'s parents' home while her parents were away.  They left in T.B.'s mother's van and took the three family dogs with them.  The minors were reported as runaways.  At the time, T.B. had an outstanding arrest warrant for unrelated conduct.

¶ 4    T.B.'s mother suspected the teens were in Craig, Colorado. She went to Craig and retrieved the van and the dogs, but she did not attempt to locate the teens.

¶ 5    Concerned about the teens' welfare, Ms. Flynn then drove to Craig, located the teens, and convinced them to return to Greeley with her. During a stop at a McDonald's in Denver, Ms. Flynn secretly called a Weld County Sheriff's deputy to devise a plan for taking the teens into custody upon their return to Greeley. She expressed concerns about their continued cooperation with her. The deputy told Ms. Flynn to call the Denver police to arrest the teens if they refused to return to Greeley.

¶ 6    An hour later, Ms. Flynn notified the deputy that she still had not left for Greeley and had not called the Denver police. The deputy again instructed Ms. Flynn to return to Greeley with the teens or call the Denver police.

¶ 7    Thereafter, Ms. Flynn did not answer the deputy's phone calls. The deputy left a voicemail saying that, if she did not have the teens in Greeley by 11 p.m., he would issue a warrant for her arrest. Ms. Flynn returned to Greeley with the teens the following evening and was subsequently arrested.

¶ 8     The prosecution charged Ms. Flynn with two counts of felony

second degree kidnapping, two counts of misdemeanor harboring a

minor, one count of felony possession of a controlled substance,

and one count of misdemeanor obstruction of a peace officer.  The

prosecution dismissed the kidnapping charges before trial, and the

jury acquitted Ms. Flynn of the possession charge and the

harboring charge related to her son.  The jury convicted her of

harboring T.B. and of obstructing a peace officer.

## II.     Sufficiency of the Evidence

### A.     Standard of Review and Law

¶ 9     We review questions of law involving statutory interpretation

de novo.  *People v. Gallegos*, 2013 CO 45, ¶ 7.  When interpreting a

statute, our primary purpose is to ascertain and give effect to the

General Assembly's intent.  *Cowen v. People*, 2018 CO 96, ¶ 12.  "To

do so, we look first to the language of the statute, giving its words

and phrases their plain and ordinary meanings."  *McCoy v. People*,

2019 CO 44, ¶ 37.  "We read statutory words and phrases in

context, and we construe them according to the rules of grammar

and common usage."  *Id.*

¶ 10    Our interpretation of a statute "must also endeavor to effectuate the purpose of the legislative scheme." *Id.* at ¶ 38. Therefore, we "read that scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts, and we must avoid constructions that would render any words or phrases superfluous or lead to illogical or absurd results." *Id.*

¶ 11    "[I]f the language in a statute is clear and unambiguous, we give effect to its plain meaning and look no further." *Cowen,* ¶ 12. "Only if the statutory language is susceptible [of] more than one reasonable interpretation and is therefore ambiguous may we resort to extrinsic aids of construction to address the ambiguity and decide which reasonable interpretation to accept based on the legislature's intent." *Id.*

¶ 12    As relevant here, a person commits the offense of harboring a minor if he or she knowingly provides shelter to a minor without the consent of the parent, guardian, or custodian of the minor and "if the person intentionally . . . [f]ails to release the minor to a law enforcement officer after being requested to do so by the officer." § 18-6-601(1)(a)(I).

4

¶ 13　To satisfy due process, the prosecution is required to prove all elements of a crime beyond a reasonable doubt. *Montez v. People*, 2012 CO 6, ¶ 21 (citing U.S. Const. amend. XIV, § 1; Colo. Const. art. II, § 25). In assessing the sufficiency of the evidence to support a conviction, we review the record de novo to determine whether the evidence, viewed in the light most favorable to the prosecution, was substantial and sufficient to support a conclusion by a reasonable mind that the defendant was guilty beyond a reasonable doubt. *People v. Griego*, 2018 CO 5, ¶ 24.

## B.　Analysis

¶ 14　Ms. Flynn contends that under the plain language of section 18-6-601(1)(a)(I) she can only be guilty of harboring a minor if she intentionally failed to release a minor to the specific law enforcement officer who requested the minor's release — in this case the Weld County Sheriff's deputy. Absent any evidence showing that she failed to release T.B. to the requesting officer, she argues that insufficient evidence supports her harboring conviction. Ms. Flynn does not challenge the sufficiency of the remaining harboring elements.

¶ 15    Conversely, the Attorney General argues that the same plain language only requires the prosecution to prove that a defendant intentionally failed to release a minor to *any* law enforcement officer after being requested to do so by a particular and definite law enforcement officer.  Thus, the Attorney General reasons that sufficient evidence supports Ms. Flynn's harboring conviction because she failed to release T.B. to Denver police after the Weld County Sheriff's deputy ordered her to contact them.

¶ 16    Giving the statute's words and phrases their plain and ordinary meanings and construing the language according to the rules of grammar and common usage, *see McCoy,* ¶ 37, we conclude that section 18-6-601(1)(a)(I) criminalizes a person's conduct when he or she intentionally fails to release a minor to the specific officer who requested the minor's release.

¶ 17    "It is a rule of law well established that the definite article 'the' particularizes the subject which it precedes.  It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'"  *Brooks v. Zabka,* 168 Colo. 265, 269, 450 P.2d 653, 655 (1969) (citing *People v. Enlow,* 135 Colo. 249, 262-63, 310 P.2d 539, 546 (1957)).  Courts have consistently applied this proposition

6

when engaging in statutory construction. *See, e.g., People v. Iannicelli*, 2019 CO 80, ¶ 38; *People v. Wentling*, 2015 COA 172, ¶ 15; *People in Interest of J.O.*, 2015 COA 119, ¶ 15; *People v. Arzabala*, 2012 COA 99, ¶ 27; *In re Marriage of Webb*, 284 P.3d 107, 110 (Colo. App. 2011).

¶ 18 Applying that proposition here, we conclude that the statute's use of the word "the" to reference the officer requesting a minor's release particularizes or defines that officer as the same previously referenced law enforcement officer to whom the minor would be released. *See Nielsen v. Preap*, 586 U.S. ___, ___, 139 S. Ct. 954, 965 (2019) ("[G]rammar and usage establish that 'the' is 'a function word . . . indicat[ing] that a following noun or noun equivalent is definite or *has been previously specified by context.*'" (quoting Merriam-Webster's Collegiate Dictionary 1294 (11th ed. 2005))) (emphasis added); *cf. People v. Close*, 867 P.2d 82, 88-89 (Colo. App. 1993) (Where a jury instruction initially referenced "a crime" and thereafter referenced "the crime," "[t]his grammatical switch to the definite article 'the' clearly refers the jury back to the same offense which it established had been committed in step one."),

*disapproved of on other grounds by Bogdanov v. People*, 941 P.2d 247 (Colo. 1997).

¶ 19    The Attorney General's interpretation would require us to improperly consider the phrase "the officer" independently from the remaining statutory language and determine that, irrespective of the law enforcement officer to whom a minor would be released, the reference to "the officer" means only that a "definite" or "specific" officer must request a minor's release. *See McCoy*, ¶ 37; *People v. Thomas*, 2020 COA 19M, ¶ 57 (We must discern the particular meaning of a statute's words and phrases "in the context of the statute as a whole.").

¶ 20    But, regardless of whether the legislature chose to refer to the officer requesting a minor's release as "any officer," "an officer," or "the officer," the statute necessarily requires a definite, identifiable officer to make a request for a minor's release before an individual can be held criminally liable. Thus, the Attorney General's reading of "the officer" as requiring only that some definite officer request a minor's release would render the word "the" meaningless. *See Iannicelli*, ¶ 47 ("We cannot . . . interpret statutory language in such a way as to render any of the statute's terms meaningless.").

8

¶ 21    Instead, reading the phrase in the context of the remaining statutory language and applying the particularizing effect of the word "the," we conclude that the legislature intended for "the officer" requesting a minor's release to be the same as the previously referenced law enforcement officer to whom the minor would be released.  *See Brooks,* 168 Colo. at 269, 450 P.2d at 655; *see also Nielsen,* 586 U.S. at ___, 139 S. Ct. at 965.

¶ 22    We are not persuaded by the Attorney General's assertion that Ms. Flynn's interpretation would lead to an illogical result because a person could avoid criminal liability under the harboring statute if he or she intentionally failed to release a minor to a physically present law enforcement officer after being requested to do so by a remote officer.  *See McCoy,* ¶ 38; *see also AviComm, Inc. v. Colo. Pub. Utils. Comm'n,* 955 P.2d 1023, 1031 (Colo. 1998) ("[A]lthough we must give effect to the statute's plain and ordinary meaning, the intention of the legislature will prevail over a literal interpretation of the statute that leads to an absurd result.") (citations omitted).  The Attorney General reasons that requiring the presence of the requesting officer would frustrate law enforcement operations and endanger the minor.

¶ 23    However, the Attorney General does not explain why, in a situation where a remote officer requests the release of a minor, the physically present officer would be precluded from also requesting the minor's release, or why the physically present officer would be unable to execute his or her law enforcement duties in the absence of the remote officer. Indeed, the scenario envisioned by the Attorney General would arise only if the physically present officer made no attempts to obtain a minor's release from the individual harboring the minor, but silently waited for that individual to respond to the remote officer's request for the minor's release — one we find highly unlikely.

¶ 24    We deem it more plausible that, even where a remote officer requests the release of a minor, a physically present officer would also request the minor's release upon his or her arrival at the scene. In this more likely scenario, the physically present officer would be, consistent with our reading of the statute, the requesting and receiving officer, and an individual would be guilty of harboring a minor if he or she intentionally failed to release the minor to that officer.

¶ 25    Finally, we are not persuaded by the Attorney General's alternate argument that, because a law enforcement officer, in other circumstances, is considered part of law enforcement as a whole, any request for the release of a minor by an officer should constitute a request by law enforcement generally.  Nothing in the statutory language supports such a construction.  *See Turbyne v. People,* 151 P.3d 563, 567 (Colo. 2007) (Where a statute's language is clear and the plain and ordinary meaning of the provision can be applied, "[w]e do not add words to the statute or subtract words from it."); *see also Cowen,* ¶ 12.

## III.    Conclusion

¶ 26    The judgment for obstructing a police officer is affirmed and the judgment for harboring a minor is vacated.

JUDGE RICHMAN and JUDGE GROVE concur.

11