24CA0488 Marriage of Stephens 02-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0488
El Paso County District Court No. 17DR30157
Honorable Laura N. Findorff, Judge

---

In re the Marriage of

James Todd Stephens,

Appellant,

and

Elena Zharinkova Stephens,

Appellee.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE SCHOCK
Freyre and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 6, 2025

---

The Drexler Law Group LLC, Matthew B. Drexler, Teresa A. Drexler, M. Addison Freebairn, Colorado Springs, Colorado, for Appellant

Brighter Day Law, Elizabeth M. Thomas, Angela C. Jones, Jason D. Hilton, Sydney F. Bierwirth, Anica K. Midthun, Wende J. Rutherford, Stephanie L. Bourn, Colorado Springs, Colorado, for Appellee

¶ 1    In this post-dissolution of marriage proceeding between James Todd Stephens (father) and Elena Zharinkova Stephens (mother), father appeals the district court's judgment adopting a magistrate's order finding father in remedial contempt. We affirm.

## I.    Background

¶ 2    In 2017, father petitioned to dissolve the parties' thirteen-year marriage. The district court dissolved the marriage and adopted the parties' stipulated parenting plan concerning their only child.

¶ 3    The stipulated parenting plan provided for joint decision-making responsibilities with respect to areas of major decisions, including health decisions. The parenting plan provided as follows:

> **Health.** Major issues which require a joint decision include the selection or change of providers, seeking a referral to other providers or specialists from the primary provider, undergoing non-routine treatment/testing, and whether the child attend any form of therapy (including OT, PT, ABA, Speech, etc. . . .), or counseling (individual, family, or group). Non-routine treatment or testing shall be defined as any other treatment or testing outside of 1) yearly physicals or 2) acute illness/injury such as strep-throat/influenza/cold/cuts.

¶ 4    Several years later, mother filed a motion for contempt against father asserting, among other things, that father was administering

1

vitamin supplements to the child without first consulting her, and over her objection, in violation of the parenting plan.

¶ 5 After a hearing, the magistrate found father in remedial contempt, concluding that he administered adult vitamins, including zinc, iron, and vitamin A, to the child without mother's agreement and was engaging in "quackery" at the child's expense. As a sanction, the magistrate ordered neither party to give the child vitamins without a recommendation from the child's doctor.

¶ 6 Father petitioned the district court for review. The district court adopted the magistrate's finding that father was in contempt by violating the parenting plan. But it rejected the sanction prohibiting the parties from giving vitamins to the child unless recommended by a doctor as beyond the magistrate's jurisdiction.

## II.    Contempt

¶ 7 Father contends that the magistrate erred by finding him in contempt — and the district court erred by adopting that finding — because there was no evidence that father administered vitamins to the child as a "non-routine" treatment. We are not persuaded.

A. Applicable Law and Standard of Review

¶ 8 We review an order of contempt for an abuse of discretion. *In re Marriage of Sheehan*, 2022 COA 29, ¶ 23. A district court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair, or based on a misapplication of the law. *Id.*

¶ 9 A district court reviewing a magistrate's decision under C.R.M. 7(a) may not alter the magistrate's factual findings unless they are clearly erroneous. C.R.M. 7(a)(9); *Sheehan*, ¶ 22. Our review of the district court's decision is effectively a second layer of appellate review, and, like the district court, we must accept the magistrate's factual findings unless they lack record support. *Sheehan*, ¶ 22.

B. Analysis

¶ 10 The parenting plan required joint decision-making for, among other things, "non-routine treatment." The magistrate found in his written order that father's administration of vitamin supplements to the child was a "non-routine treatment," and thus, a major decision requiring joint decision-making. To the extent father asserts that the magistrate did not make this finding, he is incorrect.

¶ 11     Father attacks this finding, arguing that (1) the administration of vitamins is not treatment; and (2) even if it was, it is routine. But the record supports the magistrate's findings to the contrary.

¶ 12     First, we reject father's contention that there can be no treatment in the absence of a diagnosed condition. By father's logic, he could submit the child to any number of unorthodox treatments — even serious and substantial treatments — for *perceived* conditions without consulting mother, so long as there was no underlying diagnosis indicating such treatment. We decline to interpret the parenting plan in such an irrational manner.

¶ 13     Second, even if giving a child vitamins *could* be routine, the record supports the magistrate's finding that father was giving the vitamins to the child as a "non-routine treatment." Mother testified that the child is "very small for his age" and that the parties had seen an endocrinologist to "make sure that [the child] is getting everything that he needs for his growth." She also explained that father "made the decision to give [the child] adult vitamins based on online research that he did for the growth issues the child has." The administration of "adult vitamins" to a child for "growth issues" could reasonably be found to constitute "non-routine treatment."

4

¶ 14 Moreover, mother supported this testimony with an online article that father had given to her and the child's pediatrician in connection with their discussions about the child's size and his possible need for vitamins. The article — entitled "'Functional food' for acceleration of growth in short children born small for gestational age" — states that its objective is "[t]o assess the effect of nutritional supplementation on growth in short children born small for gestational age (SGA)." Although father had written next to that sentence, "not [the child] I believe," he had also circled and starred the article's conclusion, which provides that "[s]ix months of vitamin A, iron and zinc supplementation induces growth acceleration in short children born SGA with subnormal nutrients intake similar to growth hormone therapy." This further supports the finding that the vitamins were given as "non-routine treatment."

¶ 15 We acknowledge father's testimony that his goal in providing the vitamins was simply to get the child "100 percent of vitamins he should have in a day." And on appeal, father reiterates that he was "not using vitamins to treat any condition." But even father tied his administration of the vitamins to the child's growth, citing the article for the proposition that if a child does not get the necessary

vitamins, "it can stunt [the child's] growth." He also explained that the purpose of the article was to say that "these vitamin[s] can have an impact on growth." In any event, it was the magistrate's role to resolve conflicting evidence as to father's purpose in giving the child the vitamins. *See In re Marriage of Evans*, 2021 COA 141, ¶ 45.

¶ 16 Father also suggests that we must accept his testimony that he was not using the vitamins to "treat" any condition because the magistrate did not find his testimony not credible. But the magistrate's comment that father was engaging in "quackery" along with his finding that father's administration of the vitamins was a "non-routine treatment" necessarily indicates that the magistrate found mother's evidence on this point more credible than father's.

¶ 17 Finally, father asserts that the district court erred by saying that the magistrate found that father was giving the vitamins to the child to treat the child's small stature. But while the magistrate did not say that expressly, we agree with the district court that it was implicit in the magistrate's finding that father was engaging in "quackery" and administering the vitamins as "non-routine treatment," without the pediatrician's recommendation. *See In re*

*Marriage of Nelson*, 2012 COA 205, ¶ 41 (recognizing that a court's findings may be implicit in its ruling).

¶ 18　Thus, the record supports the magistrate's contempt findings, including that father violated the parenting plan by administering "non-routine treatment" without consulting mother. We therefore will not disturb that finding or the order finding father in contempt. *See Aspen Springs Metro. Dist. v. Keno*, 2015 COA 97, ¶ 27; *In re Marriage of Webb*, 284 P.3d 107, 108-09 (Colo. App. 2011).

### III.　Evidentiary Challenge

¶ 19　Father also asserts that the magistrate abused his discretion by asking father's counsel why a proffered exhibit was relevant and, in so doing, acting as an advocate for mother. Because father did not preserve this issue for appeal, we decline to address it.

¶ 20　First, father's counsel did not object when the magistrate questioned the relevancy of the exhibit. To the contrary, she agreed with the magistrate, acknowledging "I suppose it would not be [relevant]," and moved on to another question. Because father did not object to what he now claims was inappropriate advocacy from the magistrate, he cannot make that argument for the first time on appeal. *See In re Marriage of Crouch*, 2021 COA 3, ¶ 13.

¶ 21    Father contends that the issue is preserved because the magistrate brought the issue to his own attention and ruled on it. *See In re Marriage of Turilli*, 2021 COA 151, ¶ 12. But even if the magistrate's question could be considered a ruling on the relevancy of the exhibit, father's argument is not simply that the exhibit should have been admitted — an argument father likely waived by his counsel's concession. It is that the magistrate acted improperly by even asking father's counsel how the exhibit could be relevant. That argument was never brought to the magistrate's attention.

¶ 22    Second, even if father had preserved this issue before the magistrate, he did not present it to the district court in his petition for review. *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 50 (noting that party appealing a magistrate's decision must first raise particular issue in petition for review in district court). Father asserts that this issue was encompassed by his argument in the petition that the magistrate showed bias in *other* ways — namely, by admitting a purportedly abandoned exhibit and failing to address mother's alleged violation of the parenting plan. But neither of these arguments addressed the magistrate's question about the relevancy of the exhibit, which is the issue father raises on appeal.

## IV.  Attorney Fees

¶ 23    Mother requests an award of her appellate attorney fees and costs as a sanction under C.A.R. 38(d) on the ground that father's appeal was frivolous.  We deny this request.  Although father did not prevail, we do not conclude that his appeal was frivolous.  *See In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases when the appellant presents no rational argument, or the appeal is prosecuted for the purpose of harassment or delay."), *aff'd*, 2019 CO 81.

## V.  Disposition

¶ 24    The judgment is affirmed.

JUDGE FREYRE and JUDGE SULLIVAN concur.