24CA0802 Marriage of Moore 05-08-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0802
Summit County District Court No. 20DR30016
Honorable Catherine J. Cheroutes, Judge

---

In re the Marriage of

Lisa Moore,

Appellant,

and

Dan Moore,

Appellee.

---

JUDGMENT AFFIRMED IN PART AND VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE SCHUTZ
Welling and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 8, 2025

---

The Harris Law Firm, PLLP, Katherine O. Ellis, Denver, Colorado, for Appellant

Cribbet & French, LLC, Mark D. Cribbet, Natalie J. French, Frisco, Colorado, for Appellee

¶ 1    This appeal arises from a contempt order and the resulting entry of punitive sanctions.  The contempt charges arose from the dissolution of the marriage between Daniel Moore (Dan) and Lisa Moore (Lisa).[1]  Lisa appeals the district court's order and punitive fine.  We affirm in part, vacate in part, and remand with directions.

## I.    Background

¶ 2    Dan and Lisa were married in 1992.  They separated in 2020, after almost twenty-eight years of marriage.  The district court finalized their divorce and entered permanent orders in March 2022.  As part of the permanent orders, the court ordered the parties to sell a Florida condominium, which they had valued at $1,850,000.  The parties also agreed to use binding arbitration to resolve any dispute related to the sale of the condominium.

¶ 3    The president of the homeowners association eventually offered to purchase the condominium for $2,300,000.  Lisa refused to sign a document accepting the offer.  When they could not reach a resolution, Lisa and Dan submitted the dispute to binding

---

[1] Because the parties share a last name, we refer to them by the first names the court and parties used throughout the district court proceedings.  We mean no disrespect by doing so.

arbitration. The arbitrator's award, confirmed by a district court order, required Lisa to sign a purchase and sale agreement (PSA) to complete the sale of the condominium. Lisa did not sign the PSA, despite several extensions to the deadline.

¶ 4 Dan subsequently filed a motion to hold Lisa in contempt for disobeying the court's order that she sign the PSA. He initially requested remedial sanctions in the form of fines or incarceration, punitive sanctions for the attorney fees and costs he incurred as a result of Lisa's contemptuous actions, and the payment of future costs associated with the condominium if the sale did not go through.

¶ 5 The matter proceeded to a hearing in March 2024. Prior to the hearing, Lisa signed the PSA, and the sale closed. At the start of the hearing, Dan's counsel clarified that he was no longer seeking remedial sanctions because the actions these sanctions sought (Lisa signing the PSA and closing the sale) had already occurred. The hearing proceeded only on punitive contempt allegations.

¶ 6 At the end of the hearing, the district court made oral findings and orders. The court found that Dan had proved, beyond a reasonable doubt, that Lisa knew of the court's order, had the

ability to comply with the order, and chose not to. The court confirmed that Dan had withdrawn his request for remedial sanctions. The court noted, "As a sanction, [Dan] sought reimbursement for utilities, maintenance costs, homeowners association dues and special assessments paid solely by [him]."

¶ 7     Incorporating its oral findings made at the completion of the contempt proceedings, the court imposed the following punitive sanctions on Lisa:

> 1.) [Lisa] shall pay $32,512.72 to [Dan] as equalization of expenditures (the "Equalization Amount") for utilities, maintenance and homeowners association dues and special assessments;
>
> 2.) This Equalization Amount is based on the following expenses [Dan] paid out of pocket:
>
>> a. $20,795.98 for a Special Assessment in 2022
>>
>> b. $37,085.23 for a Special Assessment in 2023
>>
>> c. Water heater repair[:] $3,250.00
>>
>> d. Utilities[:] $3,894.92
>
> 3.) The total of these expenses is [$]65,025.43; half is $32,512.72.
>
> 4.) [Lisa] is to pay half in the amount of $32,512.72.

5.) Additionally, [Lisa] shall pay $50,000.00 to [Dan] as a fine (the "Fine") for the punitive contempt . . . .

¶ 8 Lisa appeals the order finding her in contempt and the $50,000 fine payable to Dan imposed by the court as a punitive sanction.

## II. Analysis

¶ 9 Lisa first argues that we should reverse the district court's finding of contempt because it was purportedly not based on a valid order. Second, she argues that the $50,000 fine was an invalid punitive sanction because the court ordered it to be paid to Dan rather than to the court. We disagree with the first proposition but agree with the second.

## A. Contempt Citation

¶ 10 We begin by addressing Lisa's contention that the order requiring her to sign the PSA was invalid and therefore could not be enforced through a contempt citation.

### 1. Standard of Review and Applicable Law

¶ 11 Generally, "[t]he decision whether to find a party in contempt is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *In re Marriage of*

4

*Webb*, 284 P.3d 107, 108 (Colo. App. 2011) (quoting *In re Marriage of Davis*, 252 P.3d 530, 537 (Colo. App. 2011)). However, to the extent that the contempt order is predicated on legal conclusions, we review those conclusions de novo. *Barrett v. Inv. Mgmt. Consultants, Ltd.*, 190 P.3d 800, 802 (Colo. App. 2008). Moreover, we review the record de novo to determine whether the evidence was sufficient to sustain the contempt judgment. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010).

¶ 12    To establish a claim of punitive contempt, the moving party must prove the following beyond a reasonable doubt: "(1) the existence of a lawful order of the court; (2) the contemnor's knowledge of the order; (3) the contemnor's ability to comply with the order; and (4) the contemnor's willful refusal to comply with the order." *In re Marriage of Cyr*, 186 P.3d 88, 92 (Colo. App. 2008).

¶ 13    Lisa's challenge to the finding of contempt centers on the first element, the existence of a valid order. But such a challenge requires Lisa to circumvent the collateral bar rule.[2]

---

[2] Lisa concedes that she was aware of the order and failed to comply with it, so we do not address these two elements further.

¶ 14    Generally, "[u]nder the collateral bar rule, a party must obey a court order — even an unconstitutional order — unless and until that order is stayed, set aside, or reversed on appeal." *People in Interest of K.P.*, 2022 COA 60, ¶ 2. This mandate serves vital public policies. Indeed, failure to abide this principle would undercut the orderly and efficient administration of justice. *Id.*

¶ 15    There are four narrow exceptions to the collateral bar rule that may excuse compliance with a court order: (1) the court issuing the order lacked subject matter jurisdiction over the underlying case or personal jurisdiction over the parties; (2) there is no adequate and effective remedy to review the challenged order; (3) compliance with the order would cause irreparable injury; or (4) the order is transparently invalid or frivolous. *Id.* at ¶¶ 30-33.

### 2.    Application

¶ 16    Lisa's argument focuses on the fourth exception to the collateral bar rule. Specifically, she argues that the order requiring her to sign the PSA was transparently invalid or patently frivolous because if she signed it, she would have violated certain disclosure requirements under Florida law. Lisa also expressed concerns about potential conflicts of interest because the buyer was the

president of the homeowners association and used the association's counsel to complete the purchase paperwork. However, the arbitrator gave both parties time to consult with a Florida attorney prior to the first deadline to sign the documents, which provided Lisa with the opportunity to address any legal concerns she had. Furthermore, in confirming the arbitrator's award, the district court found that the buyer was fully aware of any potential defects with the property and that she was signing an "as-is" PSA. Thus, the court found, "Those aren't legal impediments to signing a contract, particularly an as-is contract, [and] particularly when the buyer is the president of the Homeowner's Association."

¶ 17    There is a "heavy presumption in favor of the validity of every court order." *K.P.*, ¶ 33 (quoting *In re Novak*, 932 F.2d 1397, 1403 (11th Cir. 1991)). And only when "there is no colorable, nonfrivolous argument to support the order . . . should a contemnor be excused from [her] disobedience of the order." *Id.* (quoting *Novak*, 932 F.2d at 1403).

¶ 18    Lisa points to no legal authority, and we are aware of none, supporting the conclusion that the district court's order adopting the arbitrator's award was transparently invalid or patently

7

frivolous. And we reject her reliance on case law invalidating a contempt finding against a defendant for exercising his right to remain silent despite a court-appointed master's order that he testify. *See People v. Razatos*, 699 P.2d 970, 976 (Colo. 1985). Here Lisa did not validly invoke a constitutional right; she just pugnaciously refused to comply with an order she had repeatedly tried to avoid. For these reasons, we reject Lisa's argument that the district court's order was transparently invalid or patently frivolous.

¶ 19 Lisa does not meaningfully argue that the district court lacked jurisdiction, that she had no remedy to challenge the order, or that she would suffer irreparable injury if she complied with the order to sign the PSA. Indeed, Lisa could have pursued an appeal and moved for a stay of the order if she thought it exposed her to civil liability. She did neither. The failure to pursue her appellate remedies did not give her the right to ignore the court's order with impunity. Thus, we perceive no error in the district court's conclusion that Lisa violated a lawful order.

¶ 20 Finally, we reject Lisa's argument that the district court erred by finding that she willfully refused to comply with the court's order. Because the PSA purportedly exposed her to civil liability,

she argues she could not have acted willfully by disobeying the order.  But this is just a recasting of her invalidity argument.

¶ 21    Litigants do not have the ability to ignore a court's order without consequence simply because they think the order is wrong.

> [I]t is fundamental to our legal system that "all orders and judgments of courts must be complied with promptly.  If a person to whom a judge directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, [s]he must comply promptly with the order pending appeal.  Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect."

¶ 22    *People v. Coyle*, 654 P.2d 815, 820 (Colo. 1982) (quoting *Maness v. Meyers*, 419 U.S. 449, 458 (1975)).  This is the cardinal principle that Lisa disregarded: she had no authority to ignore the court's valid order, and her attempt to justify her conduct on the assertion that the order was wrong is without merit.  The district court did not abuse its discretion by finding that she willfully violated the order and was therefore in contempt.  *See Webb*, 284 P.3d at 109 (applying the abuse of discretion standard to a contempt finding).

## B. Punitive Sanction

¶ 23　The district court imposed a punitive fine of $50,000 as a sanction against Lisa, which the court ordered to be paid to Dan out of the proceeds from the sale of the Florida condominium. Lisa argues that the district court abused its discretion by entering a punitive fine payable directly to Dan.[3] We agree.

### 1. Standard of Review and Applicable Law

¶ 24　When ordering a contempt sanction, the court must be clear whether the sanction is remedial or punitive. See In re Marriage of Zebedee, 778 P.2d 694, 698 (Colo. App. 1988). Remedial sanctions are "imposed to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform." C.R.C.P. 107(a)(5). Punitive sanctions are imposed as punishment "for conduct that is found to be offensive to the

---

[3] Neither party appeals the district court's imposition of homeowners association dues, special assessments, and utilities and maintenance costs in the punitive contempt order. While this "Equalization Amount" reads more like a remedial sanction than a punitive sanction, we also note that the parties agreed that Lisa would pay half of those assessments and the court treated this issue as one of reimbursement rather than as a sanction. In any event, no one questions this portion of the order on appeal, so we do not address it further.

authority and dignity of the court." C.R.C.P. 107(a)(4). A fine may be used to preserve the dignity of the court as a punitive sanction but that kind of fine is "payable to the court, not to the parties." *In re Estate of Hossack*, 2013 COA 64, ¶¶ 34-35 (citation omitted).

## 2. Analysis

¶ 25    On appeal, Lisa argues that the district court erred by imposing a punitive sanction of $50,000 to be paid to Dan. Dan does not dispute that the fine is not supported by Colorado case law. We agree.

¶ 26    At the district court hearing, Dan's counsel sought only punitive sanctions because once the closing had occurred, there was no basis on which to seek remedial sanctions. He also reserved the ability to request attorney fees for the contempt citation under section 13-17-102, C.R.S. 2024.

¶ 27    Remedial sanctions are designed to resolve disputes between parties, while punitive sanctions are designed to vindicate the dignity and authority of the court. *Eichhorn v. Kelley*, 56 P.3d 124, 127 (Colo. App. 2002). Punitive contempt "does not primarily benefit the interests of a party; instead, it punishes the offending party for conduct offensive to the court." *Id.* Thus, the matter is

11

primarily between the court and the contemnor, not between the litigants.  *Id.*

¶ 28     Here, the court found that by violating the court order, Lisa had offended the authority and dignity of the court and held her in punitive contempt.  Clearly, the court had the authority to impose a punitive fine under these circumstances.  But punitive fines must be paid to the court, not to a party.  *Zebedee,* 778 P.2d at 699 ("[A] fine is permissible for vindication of the dignity of the court, but must be made payable to the court, not to any of the parties."); *see also Hossack,* ¶ 35 ("[I]f a fine is imposed for the sole purpose of vindicating the court's dignity, then it must be paid to the court.").

¶ 29     The district court misapplied the law when it ordered Lisa to pay the fine imposed as a punitive sanction to Dan; therefore, that fine cannot stand.  *See Rinker v. Colina-Lee,* 2019 COA 45, ¶ 29. Thus, we vacate the $50,000 punitive fine made payable to Dan. On remand, the court may consider whether to assess a punitive fine against Lisa made payable to the court, and if so, for what amount.

### III. Disposition

¶ 30  We vacate the punitive sanctions portion of the district court's contempt order against Lisa but affirm that order in all other regards. We remand the case to the district court for further proceedings consistent with this opinion.

JUDGE WELLING and JUDGE KUHN concur.