24CA2069 Marriage of Young 07-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2069
Weld County District Court No. 19DR30175
Honorable Kimberly B. Schutt, Judge

---

In re the Marriage of

Briana Jurinski,

Appellant,

and

Joseph Young,

Appellee.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SULLIVAN
Tow and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 24, 2025

---

Rohweder Law Offices, Kerry P. Rohweder, Highlands Ranch, Colorado, for Appellant

No Appearance for Appellee

¶ 1    In this dissolution of marriage proceeding between Briana Jurinski (wife) and Joseph Young (husband), wife appeals the district court's judgment (1) declining to hold husband in contempt for failing to pay a first and second mortgage on the marital home pursuant to temporary orders; (2) holding wife in contempt for failing to refinance a trailer awarded to her as part of the court's permanent orders; and (3) declining to award attorney fees related to the contempt proceedings.  We affirm the judgment.

## I.    Background

¶ 2    The parties married in July of 2003.  They separated in 2019, and the district court entered temporary orders in January 2020.  As part of the temporary orders, the court declined to order maintenance.  Instead, it ordered husband to continue paying the first and second mortgages on the marital home, where wife and the parties' children were living, in an effort to maintain the status quo.

¶ 3    In April 2021, wife moved for a finding of contempt, alleging that husband hadn't paid the mortgages on the marital home after he had secured a forbearance.  Wife also claimed that husband hadn't paid other household expenses, including her phone and some of the children's extracurricular activities.  The court never

1

ruled on the motion. In April 2022, just days before the permanent orders hearing, wife again moved for contempt on the same grounds.

¶ 4     The district court finalized the divorce and entered permanent orders on financial matters on May 11, 2022. Eight days later, the court denied wife's April 2022 contempt motion because the temporary orders were no longer in effect and had been superseded by the court's permanent orders. The court allowed wife, however, to submit an amended verified motion for contempt citing additional legal authority.

¶ 5     Wife again moved for contempt in June 2022, providing additional authority supporting her assertion that the court retained authority to enforce temporary orders. The court noted that it was an open question whether it could enforce the temporary orders through a contempt proceeding now that permanent orders had been issued, but it nonetheless held a hearing. After hearing evidence and considering written closing arguments, the court found that husband wasn't in contempt as it related to the mortgages because he sought forbearance to preserve the marital estate. This action, the court found, served the temporary orders'

2

purpose of preserving the status quo. The court found husband in contempt, however, for nonpayment of wife's phone bill and the children's extracurricular activities. Neither party appeals this portion of the contempt order.

¶ 6 Meanwhile, in August of 2023, husband filed a motion for contempt alleging that wife had (1) failed to retitle and refinance a trailer that the court had allocated to wife in the permanent orders and (2) withheld certain personal items. After a hearing on husband's motion, the court held wife in contempt related to the trailer refinancing and ordered her to purge the contempt by paying husband the value of the trailer loan as of the date permanent orders were entered. The court didn't find wife in contempt, however, for withholding husband's personal items.

¶ 7 The court then considered the parties' requests for attorney fees in each contempt proceeding. Finding that neither had fully prevailed on their contempt motions, the court ordered the parties to bear their own fees and costs.

## II. Wife's Contempt Motion for Failure to Pay Mortgages

### A. Authority to Decide Contempt Motion Related to Temporary Orders

¶ 8 Before reaching the merits of wife's contempt motion, we note that the law is unclear whether a district court retains authority to hear a contempt motion for a party's failure to follow temporary orders after the court enters permanent orders.

¶ 9 To be sure, the district court retains authority to hold a party in punitive contempt for failing to comply with temporary orders for spousal maintenance and child support. *See In re Marriage of Nussbeck*, 974 P.2d 493, 499-500 (Colo. 1999). And section 14-10-122(1)(c), C.R.S. 2024, provides that in any action where maintenance is ordered, a missed payment becomes a final money judgment when it is due and not paid and may be enforced as other judgments without further court action.

¶ 10 But the court didn't order temporary spousal maintenance in this case. Rather, in lieu of maintenance and in an effort to maintain the status quo, the court ordered husband to continue paying the mortgages until permanent orders issued. Wife points us to no authority holding that temporary orders of this type can be

enforced via a contempt proceeding after permanent orders have been entered. Indeed, temporary orders terminate when the final decree is entered. § 14-10-108(5)(c), C.R.S. 2024; *In re Marriage of Salby*, 126 P.3d 291, 295 (Colo. App. 2005); *In re A.D.C.*, 969 P.2d 708, 711 (Colo. App. 1998) ("Temporary orders terminate upon, and merge into, the final decree unless continued pursuant to court order.").

¶ 11     The district court didn't resolve the question of whether it retained authority to entertain wife's motion. It instead recited the parties' positions and, without deciding the issue, determined that husband's actions didn't constitute contempt. We also need not decide this question because the outcome remains the same regardless of whether we conclude that the district court retained authority to entertain wife's contempt motion or we decline to review the court's contempt order. This is so because we conclude, as discussed below, that the district court acted within its discretion when it found that husband's actions weren't contemptuous.

## B. Applicable Law and Standard of Review

¶ 12    A district court holds discretion to find a party in contempt, and we will not reverse that decision unless the court abuses its discretion reaching it. *In re Marriage of Sheehan*, 2022 COA 29, ¶ 23. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *In re Marriage of Bergeson-Flanders*, 2022 COA 18, ¶ 10.

¶ 13    Colorado law recognizes two types of contempt sanctions: punitive and remedial. *Cyr,* 186 P.3d at 91. The district court in this case imposed a remedial sanction. "[R]emedial sanctions are civil in nature and are intended 'to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform.'" *Id.* at 92 (citation omitted). The purpose of remedial sanctions is for the benefit of another. *See id.*

¶ 14    One basis for a court's contempt finding is when (1) a party hasn't complied with a lawful court order (2) that the party knew about. *See Sheehan,* ¶ 24 (citing *In re Marriage of Cyr,* 186 P.3d 88, 91 (Colo. App. 2008)); C.R.C.P. 107(a)(1) (defining "contempt" as "disobedience or resistance by any person to or interference with any lawful . . . order of the court"). With remedial contempt, once

6

the movant establishes these two factors, the burden shifts to the alleged contemnor to show their inability to comply with the order. *Sheehan*, ¶ 24.

## C.  Analysis

¶ 15    The district court found that husband was aware of the order to pay the mortgages and made only three payments between December 2021 through May 2022.  The court noted that wife sought approximately $12,000 to account for the payments not made because husband's nonpayment increased the balance that she had to refinance after the marital home was allocated to her in permanent orders.

¶ 16    The court found, however, that even if husband had the ability to pay, "compelling him to reimburse [w]ife for those missed payments through remedial sanctions . . . would not be consistent with the [c]ourt's detailed findings and orders in permanent orders or the principles of contempt."  In sum, the court couldn't find that husband "engaged in contemptuous conduct by availing himself of . . . available relief under the circumstances and not making the actual payments . . . ."  The court further found that (1) husband's actions were justified based on previous discussions the parties had

with the court and (2) the forbearance served the temporary orders' purpose of "preserv[ing] the status quo and marital estate."

### 1. Shifting the Burden of Proof

¶ 17 Wife first asserts that the district court erred when it required her to show that husband had an ability to pay the mortgages once she had established that he was aware of the order and failed to comply.

¶ 18 At the contempt hearing, the parties stipulated that husband knew of the order to pay the first and second mortgages but only made three total payments during the time period in question. After presenting these stipulations, wife's counsel then stated "I think that brings us to the point in the case . . . where the burden has now shifted to [husband] . . . ." The court responded by saying "I think you first have to establish some ability to pay . . . ." Wife's counsel disagreed but nonetheless proceeded to present an exhibit of husband's bank balances during the pendency of the proceeding.

¶ 19 Husband then presented evidence that he lost his job during the pendency of the proceeding and explained why he sought forbearance on the mortgages. He also relayed a conversation he had with the court during a status conference during which the

8

court implored the parties to do what they could to preserve the marital estate. He also presented evidence of his present inability to pay at the time of the hearing based on his current finances.

¶ 20 We agree with wife that the district court improperly shifted the burden to her to establish husband's inability to pay the mortgages. *See Sheehan*, ¶ 24 ("In remedial contempt proceedings, once the movant establishes that an underlying order of which the contemnor is aware has been violated, the burden shifts to the contemnor to prove an inability to comply."). But we conclude the error was harmless because the court's decision didn't turn on husband's inability to pay, either at the time the payments were due or at the time of the contempt hearing. *See* C.R.C.P. 61 (courts must disregard any the error that doesn't affect a party's substantial rights). Rather, the court found that husband's failure to pay the mortgages, which were in forbearance, wasn't contemptuous under the totality of the circumstances.

## 2. The District Court Acted Within its Discretion by Finding Husband's Actions Weren't Contemptuous

¶ 21    Wife also challenges the district court's decision that husband wasn't in contempt, arguing that its consideration of "equitable" factors constituted legal error.

¶ 22    Wife asserts that the court shouldn't have considered the equity awarded to her in the permanent orders because the court had no evidence of husband's failure to pay the mortgages before it when it divided the marital assets.  Because no transcript of the permanent orders hearing is included in the record, we can't confirm what evidence was presented to the district court during the permanent orders hearing.  Husband testified at the contempt hearing that the fact of the mortgages being in forbearance "was discussed in the hearing," although he didn't specify which hearing.

¶ 23    Nonetheless, we can't say that the court abused its discretion by considering the totality of the circumstances when determining whether husband was in contempt.  *See In re Marriage of Davis*, 252 P.3d 530, 537 (Colo. App. 2011) (concluding that, although the husband didn't strictly comply with the order at issue, the district

court didn't abuse its discretion when the totality of the circumstances didn't warrant a contempt finding).

¶ 24 For example, the district court considered that wife was awarded $319,627 in equity from the marital home. And, after allocating the remainder of the marital estate the overall property division was unequal in wife's favor, with wife receiving $405,339 in net assets and husband receiving $220,364. The court noted that it hadn't required an equalization payment and that its permanent orders took into account the balance of the mortgages while they were in forbearance. The court saw no need to "now compel husband to reimburse wife for the $12,000 that he would have made" had the mortgages not been in forbearance, and that such an order would be "contrary to the overall findings of fairness and equity" in the permanent orders.

¶ 25 In addition to the division of property, the district court also considered its discussion with the parties at a status conference on May 11, 2020, during which husband expressed difficulty making mortgage and vehicle payments due to losing his job and the ongoing COVID-19 pandemic. Although the court didn't give husband express permission to enter into forbearance on the

mortgages, it noted that it had ordered the parties to work together in light of the unusual circumstances of the pandemic and to investigate available relief to "preserve the marital estate." Accordingly, given the court's statements at the status conference and after considering the temporary orders' purpose of preserving the status quo, the court said it couldn't find that husband engaged in contemptuous conduct.

¶ 26    Based on these findings, and the record supporting them, we can't conclude that the district court abused its discretion by denying wife's contempt motion. *See E-470 Pub. Highway Auth. v. Revenig*, 140 P.3d 227, 230-31 (Colo. App. 2006) (Under the abuse of discretion standard, we ask "not whether we would have reached a different result but, rather, whether the trial court's decision fell within a range of reasonable options.").

III.   Husband's Contempt Motion for Failure to Refinance Trailer

¶ 27    Wife also contends that the district court erred when it found her in contempt for failing to refinance the trailer, arguing that she had paid husband the amount owed before the contempt hearing. We disagree.

¶ 28    The district court found that, at the time of the hearing on husband's contempt motion, a loan in husband's name was still associated with the trailer. The court found that the value of the loan when permanent orders entered was $9,741.53. It thus ordered wife to pay that amount to husband to purge the remedial contempt.

¶ 29    Wife filed a motion for post-trial relief under C.R.C.P. 59, asserting that she had paid the loan in full in January 2024. The court denied wife's motion because (1) wife sent the payment nearly two years after permanent orders issued; (2) it was accompanied by a communication explaining that it was a "full settlement of a disputed amount" — and thus wasn't a good faith payment; and (3) husband rejected the payment. The court noted that a loan for the trailer still existed and that wife had failed to extinguish it in violation of the permanent orders.

¶ 30    On appeal, wife again asserts that she made attempts to refinance the trailer but husband didn't cooperate because he refused to provide statements of the current balance. Wife also reasserts that she sent husband a check for the loan balance in January 2024. But wife doesn't dispute that husband rejected her

payment or that a loan for the trailer still existed in husband's name. Thus, even if the court believed wife's explanations that she intended to refinance and retitle the trailer, all agree that she didn't do so. *See Cyr*, 186 P.3d at 92 ("Because the purpose is remedial, and for the benefit of another, it does not matter what the contemnor intended when he or she refused to comply."). Moreover, the district court heard wife's evidence about her attempts to comply with the order requiring refinancing of the trailer but still found her in contempt. As an appellate court, we aren't at liberty to reweigh this evidence on appeal. *See In re Marriage of Kann*, 2017 COA 94, ¶ 36 ("[O]ur supreme court has . . . expressed unbridled confidence in trial courts to weigh conflicting evidence.").

## IV.   Attorney Fees

¶ 31    Finally, wife appeals the district court's decision declining to award attorney fees to either party for their respective contempt motions. She asserts that (1) the court erred when it reserved its decision regarding her request for attorney fees until both contempt motions had been decided and (2) it should have engaged in a "lodestar analysis" to determine reasonable attorney fees. We aren't persuaded.

14

¶ 32    C.R.C.P. 107(d)(2), entitled "Remedial Sanctions," provides in part that costs and reasonable attorney's fees in connection with "the contempt proceeding may" be assessed in the court's discretion. *See In re Marriage of Vega*, 2021 COA 99, ¶ 18 (The use of the word "may" is permissive; it is "generally indicative of a grant of discretion or choice among alternatives.") (internal quotations omitted).

¶ 33    At the close of the hearing on wife's contempt motion, the court reserved ruling on wife's request for attorney fees "given the fact that she did not prevail on part of her contempt motion" and because the findings on husband's contempt motion "may impact the [c]ourt's orders as to attorney's fees to be awarded to either party."

¶ 34    Wife asserts this was error because the use of "the" to modify "contempt proceedings" in C.R.C.P. 107 "indicates a reference to a specific type of contempt proceeding, not a general reference to any contempt proceeding." *See Brooks v. Zabka*, 450 P.2d 653, 655 (Colo. 1969) ("[T]he definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'"). Thus, she claims, the

15

court had to decide the question of attorney fees on her motion for contempt separately from husband's motion.

¶ 35 We acknowledge that this court has previously used this principle of interpretation to determine that attorney fees are an available sanction for remedial, but not punitive, contempt proceedings. *See In re Marriage of Webb*, 284 P.3d 107, 110 (Colo. App. 2011) (because the "use of 'the' to modify 'contempt proceeding' indicates a reference to a specific type of contempt proceeding, not a general reference to any contempt proceeding," attorney fees were only available in connection with remedial contempt proceedings). But we need not determine whether it also requires a district court to determine attorney fees after each separate contempt motion is decided, as wife asserts, because she fails to explain how she was harmed.

¶ 36 The district court found that neither party prevailed on all their claims for remedial contempt and that, "at times, both have acted in ways that undermined the intent and execution of the [c]ourt's orders" and both "undoubtedly incurred considerable attorney's fees which outweighed any relief gained through these protracted proceedings." Wife doesn't dispute these findings or

16

otherwise argue that the court would have awarded her attorney fees had it considered her request separately. *See* C.R.C.P. 61. As a result, we decline to disturb the court's decision denying wife's request for attorney fees.

¶ 37  We also disagree with wife's assertion that the court erred when it didn't conduct a "lodestar" analysis. Such an analysis is only required once a court awards attorney fees and is tasked with determining a reasonable amount. *See In re Marriage of Aragon*, 2019 COA 76, ¶ 13. Here, the court denied both parties' request for attorney fees related to their contempt motions. Accordingly, no lodestar analysis was required.

## V.   Disposition

¶ 38  We affirm the judgment.

JUDGE TOW and JUDGE YUN concur.